> 2   *Q. How was your authority undermined with*
> 3   *respect to Mr. LaBonte?*
> 4   *A. Mr. LaBonte was the union steward and had*
> 5   *the ability to go into Mr. Theroux's office after*
> 6   *every union meeting and sit and talk with Mr. Theroux,*
> 7   *and Mr. LaBonte just didn't have to follow the same*
> 8   *rules as the rest of the people.*
> 9   *If I gave him work, he complained about it.*

(Plaintiff's Deposition, Ex. C, 125:21-127:9

However, Plaintiff's authority was not undermined as to all employees, because, again by Plaintiff's own testimony:

> 11   *The other guys all just kind of fell in*
> 12   *place, if I needed them, they helped me, a handful of*
> 13   *people.*

(Plaintiff's Deposition, Ex. C, 127:11-13)[7]

The only disparate treatment Plaintiff allegedly experienced seems to have been that his authority over Ms. Cardin was undermined, that is, she was not required to listen to him, go through him, etc. This purported disparate treatment was not, however, the result of gender bias or any relationship between her and Theroux because Bourbeau experienced the same lack of authority and "through channels" communication with several other male, but not all, CMG employees.

---

[7] See also generally, Plaintiff's deposition 184:15-186:15.

21

Title VII does not make unlawful all disparate treatment, only disparate treatment based on protected class (in this instance, gender). By Bourbeau's own admission, the alleged disparate treatment was not based on his gender.

Finally, Plaintiff suffered no genuine adverse employment action as a result of the alleged disparate treatment, as required under Title VII, *McDonnell Douglas Corp.*, 411 U.S. at 802, *Schuler v. Great American Ins. Co.*, 6 F.3d 836 (1st Cir. 1993); *Holt v. Gamwell Corp.*, 797 F.2d 36, 37-38 (1st Cir. 1986). He never received any negative performance reviews (even informal, verbal ones), was never disciplined for his work or the manner in which he supervised any CMG employee, including Ms. Cardin herself, nor was he ever disciplined for any complaints he made. He never received a pay cut, but rather received his appropriate annual increases, was never demoted, and never heard of anyone being terminated, penalized or disciplined because he or she made a complaint. (see generally Plaintiff's Deposition 190:16-192:19).

In fact, the <u>only</u> impact Bourbeau could articulate was:

```
18    Q.   Did that have any impact on how anyone at

19    the City viewed your job performance?

20    A.   Oh I think so, definitely, yes.

21    Q.   Do you know of anybody who ever mentioned

22    it or complained?

23    A.   No, but there were many times people at the


                            143

1     counter when things would take place, just comments,

2     this guy is an asshole to work with, and all of these

3     people from other departments were standing there and

4     heard this.

5     Q.   Other than that you don't know how it
```

22

> 6   *impacted, how the City viewed your job performance?*
>
> 7   *A.   There was no evaluations or job performance*
>
> 8   *evaluations done, so I don't know of anybody else that*
>
> 9   *knew it other than the people that came in on a daily*
>
> 10  *basis.*

(Plaintiff's Deposition, Ex. C, 142:18-143:10)

For these reasons, this count must be dismissed.

**Count V: Intentional Infliction of Emotional Distress**

G.L. c. 151B Exclusive Remedy

Intentional infliction of emotional distress is a common law claim whose remedy is encompassed by G.L. c. 151B. M.G.L. c. 151 B is a comprehensive remedial statute for unlawful employment discrimination, imposing procedural, jurisdictional and statute of limitations prerequisites.

Massachusetts courts disfavor duplicative remedies, especially when the legislature has provided a comprehensive scheme to redress the plaintiff's grievances. See *Melley v. Gillette Corp.*, 19 Mass.App.Ct. 511, 514 (1985), *aff'd* 397 Mass. 1004, 491 N.E.2d 252 (1986) ("the policies of M.G.L. c. 151B and the recent decisions of the Supreme Judicial Court . . . disfavor the creation of duplicative remedies"); *Mouradian v. General Electric Co.*, 23 Mass.App.Ct. 583, 543, 503 N.E.2d 1318 (1987) (affirming motion to dismiss; plaintiff precluded from bringing claim under the Massachusetts Civil Rights Act because "the only right secured by the Act . . . is the right which could have been enforced under the procedures established by c. 151B.") ; *Cf. O'Connell v. Chasdi*, 400 Mass. 686, 511 N.E.2d 349 (1987) (allowing use of c. 12 § 11I as an alternative legal cause of action for sexual harassment where the employer was not subject to § 151).

G. L. c. 151B, as a comprehensive statutory remedy, encompassing the claims and remedies for intentional infliction of emotional distress, those claims are preempted by the exclusive remedies under c. 151B. *Melley v. Gillette, Mouradian v. General Electric.*

See also *Evans v. T.J. Maxx*, 2005 WL 705384 (Ex. G) ("The language of G.L. c. 151B as well as the relevant case law demonstrate that G.L. c. 151B, where applicable, provides the exclusive remedy . . .")

Workers' Compensation Exclusive Remedy

Plaintiff Bourbeau, as an employee of the City of Chicopee and a co-employee of David Theroux, is also bound by the Massachusetts Worker's Compensation Act, G.L. c. 152. He did, in fact, file a worker's compensation claim (Ex. H). Any common law claim for an injury sustained in the course of employment is barred by the exclusivity of the Act. G.L. c. 152 § 26. *Green v. Wyman-Gordon Co.*, 422 Mass. 551, 558 (1996). A claim for intentional infliction of emotional distress is a common law claim. It is barred by G.L. c. 152 § 26. The bar applies both to employers and the co-employee/supervisor who is alleged to have committed the tortious act. *Anzalone v. Mass. Bay Transp. Auth.*, 408 Mass. 119, 124-125, 526 N.E.2d 246 (1988); *Fusaro v. Blakeley*, 40 Mass.App.Ct. 120, 123, 661 N.E.2d 1339, 1341 (1996); *Evans v. T.J. Maxx*, 2005 WL 705384 (Ex.G); *Richards v. Walter Fernald State School*, 2000 WL 1473024 (Ex. I); *Daigle v. NECX, Inc.*, 13 Mass.L.Rptr 462 (Ex. J).

Intentional Infliction of Emotional Distress: Merits

In order to recover for intentional infliction of emotional distress, Plaintiff must prove that the Defendant's conduct was extreme and outrageous beyond all possible bounds of decency and was utterly intolerable in a civilized community, and that Plaintiff's resultant distress was of a nature that no reasonable person could be expected to endure it. *Foley v. Polaroid Corp.*, 508 N.E.2d 72, 82 (1987), *Agis v. Howard Johnson Corp.*, 355 N.E.2d. 315, 318-19 (1976). Extreme and outrageous conduct is more than just workaday insults, hurt feelings from bad manners, annoyances or petty oppressions. It means a high order of ruthlessness or deliberate malevolence. *Foley* at 82, *Agis* at 319.

The alleged relationship between Theroux and Cardin, as a matter of law, cannot be found to be extreme and outrageous (i.e., a high order of ruthlessness or deliberate malevolence), nor could it be found to be beyond all possible bounds of decency and utterly intolerable in a civilized community. At most, what Theroux experienced were a

24

handful of isolated incidents of affection over an almost two year period, none of which was significant. Individually or collectively, they fall far short of the required burden. Assuming that Theroux and Cardin were having an office affair, and that their sporadic affection were incidents of it, such relationships, far from being "beyond all possible bounds of decency and utterly intolerable in a civilized community," are relatively common. More importantly, the circumstances to which Mr. Bourbeau was actually exposed were neither "extreme" nor "outrageous," either individually or collectively.

Moreover, Theroux's alleged conduct was not directed at Bourbeau, but was directed at (or allegedly with) Debra Cardin. Where the conduct is not directed at the plaintiff, but at a third person, plaintiff must also prove that he is an immediate family member of the third person at whom the conduct was directed, or the plaintiff suffered bodily harm from the emotional distress. *Anthony H. v. John G.*, 612 N.E.2d 663, 665 (1993), *Nancy P. v. D'Amato*, 517 N.E.2d 824 (1988), *Foley*, above at 82, *Agis*, above at 318-319. Bourbeau must therefore also prove that he is either Debra Cardin's immediate family member, or that he suffered bodily harm. *Anthony H* at 665. Bourbeau is not Ms. Cardin's immediate family member (and does not claim that he is). Nor is there any evidence that he has suffered bodily harm as a result of his emotional distress. No doctor has opined, and Bourbeau has not described, any resultant bodily harm. Bourbeau does not claim physical harm, only psychological injuries (Complaint ¶52).

This count must be dismissed.

### Count VI:  Negligent Infliction of Emotional Distress

Plaintiff claims that the smoking at the CMG and the alleged sexual harassment constituted negligent infliction of emotional distress.

As with Count V, Intentional Infliction of Emotional Distress, negligent infliction of emotional distress is a common law claim barred by the exclusivity of c. 151B and c. 152.

#### Duty of Care

To recover for the tort of negligent infliction of emotional distress, a plaintiff must prove: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm

25

manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." *Payton v. Abbott Labs*, 386 Mass. 540, 557, 437 N.E.d2d 171 (1982). It is fundamental that there must be a showing of a duty of care owed to the plaintiff, because "[t]here can be no negligence where there is no duty." *McHerron v. Jiminy Peak, Inc.*, 422 Mass. 678, 681, 665 N.E.2d 26 (1996), quoting from *Aetna Cas. & Sur. Co. v. Fennessey*, 37 Mass.App.Ct. 668, 673, 642 N.E.2d 1050 (1994). "Whether a defendant has a duty of care to the plaintiff in the circumstances is a question of law for the court, to be determined by reference to existing social values and customs and appropriate social policy." *O'Sullivan V. Shaw*, 431 Mass. 201, 203, 726 N.E.2d 951 (2000), and cases cited. To the extent that Plaintiff alleges that his emotional distress was caused by a relationship between David Theroux and Debra Cardin, his claim must fall as a matter of law. There is no duty to avoid an individual knowing of an ongoing, consensual, intimate relationship, just as there is no duty to insulate people from a host of relationships. *Conley v. Romeri*, 806 N.E.2d 933 (Mass.App.Ct. 2004).

Physical Harm

A successful negligent infliction of emotional distress claim, in other words, must do more than allege 'mere upset, dismay, humiliation, grief and anger.' . . . Rather, Plaintiff must corroborate their mental distress claims with enough objective evidence of harm to convince a judge that their claims present a sufficient likelihood of genuineness to go to trial.

Expert medical testimony *may* be needed to make this showing. Medical experts, however, need not have observed an actual, external sign of physical deterioration. . . . . They may consider, in the exercise of their professional judgment, the plaintiffs' description of the symptoms they experience . . . , *Sullivan v. Boston Gas Co.*, 605 N.E.2d 805, 810.

The *Sullivan* case modified slightly the showing required by a plaintiff to succeed on a claim for negligent infliction of emotional distress, <u>Bresnahan v. McAuliffe, 47 Mass.App.Ct. 278, 283-284, 712 N.E.2d 1173 (1999)</u>. Prior to *Sullivan,* case law required that a plaintiff demonstrate: "(1) negligence; (2) emotional distress; (3)

causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case. *Sullivan v. Boston Gas Co., supra* at 132, 605 N.E.2d 805, quoting *Payton v. Abbott Labs*, 386 Mass. 540, 557, 437 N.E.2d 171 (1982). Under the former rule, the plaintiffs had to substantiate the objective symptomatology with "expert medical testimony." *Payton v. Abbott Labs, supra* at 556, 437 N.E.2d 171. The court modified this requirement, holding instead that plaintiffs must "corroborate their mental distress claims with enough objective evidence of harm to convince a judge that their claims present a sufficient likelihood of genuineness to go to trial." *Sullivan v. Boston Gas Co., supra* at 137-138, 605 N.E.2d 805. The court did not eliminate the physical harm requirement, but merely expanded the range of symptoms that may provide the type of objective evidence to prove physical harm to include symptoms that could be classified as more "mental" than "physical." *Id.* at 135-139, 605 N.E.2d 805 ("we hold that both plaintiffs produced sufficient objective evidence of *physical manifestation* of mental distress to survive a summary judgment motion" [emphasis supplied] ). In addition, the court explicitly stated that "[a] successful negligent infliction of emotional distress claim ... must do more than allege 'mere upset, dismay, humiliation, grief and anger.' " *Id.* at 137, 605 N.E.2d 805, quoting *Corso v. Merrill*, 119 N.H. 647, 653, 406 A.2d 300 (1979). *Gutierrez v. Mass. Bay Transp. Auth.*, 772 N.E.2d 552 (Mass. 2002).

  Plaintiff Bourbeau suffers from a seizure disorder, a condition which predates his employment at CMG. He alleges that the smoking at CMG and the alleged Theroux-Cardin relationship triggered or aggravated the seizure disorder, and further caused PTSD. The PTSD claim asserts psychological injuries only, no physical injury or objective symptomatology of illness or injury. (Complaint, ¶ 52). Moreover, no doctor has given any opinion which even remotely concludes that any causal connection exists between the smoking and the seizure symptoms. To the contrary, Plaintiff Bourbeau's own doctor opined that any such causation was **not likely**. (Medical record of Claudia Koppelman, M.D., Ex. K).

  This count must be dismissed.


**Count VII: Violation of 29 U.S.C. 2613: Medical Leave Act**

27

29 USCA § 2612 states:

>   (1)   Entitlement to leave
>
>   Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 2-month period for one or more of the following:
>   *******
>   (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

The City of Chicopee provided to Bourbeau forms for leave under the Medical Leave Act. However, Bourbeau simply ignored them and failed to fill them out and return them to the City. By Bourbeau's own admission:

>   13   *When did you notify the CMG or the City you*
>
>   14   *were going to put in for Family Medical Leave Act*
>
>   15   *time?*
>
>   16   *A.   I believe a package came, a certified*
>
>   17   *package, sometime in June after I had been noticed*
>
>   18   *that my job was no longer going to be funded, and I*
>
>   19   *don't think I filled out the paperwork.*

(Plaintiff's Deposition, Ex. C, 152:13-19)

### Count VIII:  Violation of 42 USC 12101 Americans With Disabilities Act

Plaintiff alleges violation of 42 USC 12101, et seq.: Americans With Disabilities Act (Complaint ¶¶84-87).[8][9]  The Americans with Disabilities Act of 1990 ("ADA"), as

---

[8] The count does not specify whether this claim is based upon Plaintiff's seizure disorder and smoking at the CMG, or upon his seizure disorder and the alleged sexual harassment. ¶84 reavers all prior allegations in the Complaint, including both those concerning smoking and sexual harassment. However, in Plaintiff's original MCAD/EEOC claim the alleged disability was based on his seizure disorder and smoking, but not on his seizure disorder and sexual harassment. (Ex. L). A prerequisite to filing suit under Title VII is the bringing of an administrative claim. Any claims not presented in the administrative proceeding are barred. Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996); Silva v. Hit or Miss, 73 F.Supp. 2d 39, 41-42 (D. Mass. 1999). Therefore, only the smoking claim will be addressed.

28

amended by the Civil Rights Amendments Act of 1991, 42 U.S.C. § 12101 *et seq.* (1994), prohibits an employer from discrimination based upon the known physical or mental impairments of a qualified individual with a disability. 42 U.S.C. § 12112 (1994). In order to state a claim under the ADA, Plaintiff first must show that he is a "qualified individual with a disability" within the meaning of the ADA. 42 U.S.C. § 12112 (1994); *Jackson v. Veterans Administration*, 22 F.3d 277, 278 (11th Cir. 1994); *Chandler v. City of Dallas*, F.3d 1385, 1390 (5th Cir. 1993). The ADA defines "qualified individual with a disability" as an "individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (1994); 29 C.F.R. § 1630.2(m) (1993); *School Bd. Of Nassau County v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987). Thus, to be a "qualified individual with a disability," Plaintiff must show (1) that he has a disability, and (2) that he can perform the essential functions of his job despite his disability, or, can perform the essential functions of his job with a reasonable accommodation for his disability. Once Plaintiff satisfies the requirement of being a "qualified individual with a disability," Plaintiff then must show that Defendant discriminated against him because of his disability. Discrimination based on a disability may occur in numerous ways. In this case, Plaintiff alleges that Defendant treated him adversely because of his known disability and failed to reasonably accommodate his known disability. To establish a claim for disability discrimination under the ADA, an employee must show: (1) that he suffers from a disability; (2) that he was nevertheless able to perform the essential functions of his job, either with or without reasonable accommodation; and (3) that his employer took adverse action against him because of his disability. *Wright v. CompUSA, Inc.*, 352 F.3d 472 (1st Cir. 2003).

Plaintiff cannot bear his burden of proof that he was disabled within the meaning of 42 U.S.C. 12101. His seizure disorder does not qualify as a "disability" under ADA absent evidence that he was substantially limited in one or more major life activities as a result of that condition. First and foremost, Plaintiff himself in his response (rebuttal to

---

[9] As demonstrated elsewhere, there is no supervisor liability for violation of 42 U.S.C. 12101. See cases in Counts I and III).

29

the City of Chicopee's Position denied having a handicap as defined by M.G.L. c. 151 (see p. 40, below). He is therefore not disabled as defined by 42 U.S.C. 12101, et seq., the ADA. Plaintiff Bourbeau was asked directly whether or not his seizure disorder substantially limited his ability to do any major life activity. He denied any substantial limitations after January 2001.

> 19  Q. So in July of two thousand was the seizure
>
> 20  disorder the only malady you were treating for
>
> 21  regularly?
>
> 22  A. Yes.
>
> 23  Q. And did that prevent you from taking part
>
> 18
>
> 1  in any kind of major life activity?
>
> 2  A. I was unable to drive for six months.
>
> 3  Q. During two thousand?
>
> 4  A. Yes, from July, I mean June 17th until
>
> 5  January 16th or 17th I started driving.
>
> 6  Q. As a result of Doctor Hazratji's order?
>
> 7  A. Doctor Hazratji, yes.
>
> 8  Q. And where was -- why was it that you
>
> 9  couldn't drive?
>
> 10  A. Because I had a seizure disorder and I
>
> 11  think that is basically a requirement that you don't
>
> 12  drive an automobile for six months, depending on how

13    your treatment goes, whether they are successful or

14    not.

15        Q.   At some point did he clear you to drive

16    again?

17        A.   He had just said six months and I took it

18    upon myself to drive again January.

19            I don't remember the timetable.  But I

20    think by then I had started seeing Doctor Sullivan and

21    the driving issue had been past the six month period.

22        Q.   So after you began driving again, did your

23    seizure disorder prevent you from taking part in any

19

1    major life activity?

2        A.   The seizure disorder itself, no.

3        Q.   Had it been controlled by medication at

4    that point?

5        A.   Yes.

6        Q.   So you were not under any restrictions at

7    work as a result of the seizure disorder?

8        A.   Other than driving, that was the only thing

9    I couldn't do.

10       Q.   I guess I am talking after you were cleared

11    to drive again?

31

12   A.   After I was cleared to drive, there were no

13   restrictions from my doctor that I could not

14   participate in.

15   Q.   Were there any activities that you felt you

16   couldn't participate in, again after you were cleared

17   to drive again?

18   A.   No.

(Plaintiff's Deposition, Ex. C, 17:19-19:18)

2   Q.   Up to the point that you lost your job with

3   the City of Chicopee --

4   A.   Uh-huh.

5   Q.   Did you have any physical conditions which

6   limited your ability to do any major life activity,

7   other than the six-month period when you said you

8   couldn't drive?

9   A.   I am not sure I understand.

10   Q.   Well, you have described that you have had

11   treatment for seizure disorder?

12   A.   Yes.

13   Q.   And you have described that you had some

14   stomach problems?

15   A.   Yes.

32

> 16    Q.  And some sleep issues?
>
> 17    A.  Uh-huh.
>
> 18    Q.  Have any of those conditions or any other
>
> 19    medical condition ever prevented you from taking part
>
> 20    in any major life activity prior to the time that you
>
> 21    left the City?
>
> 22    A.  Not that I can think of. Other than the
>
> 23    seizures and break-through seizures.

(Plaintiff's Deposition, Ex. C, 40:2-23)

> 10    Q.  You mentioned in count ten of your
>
> 11    complaint that you were the subject of handicapped
>
> 12    discrimination.
>
> 13        Can you tell me what your handicap was at
>
> 14    the time?
>
> 15    A.  Seizure disorder.

(Plaintiff's Deposition, Ex. C, 71:10-15)

By Plaintiff's own testimony, the only medical condition from which he suffered did not substantially limit one or more of his major life activities. He is therefore not disabled while employed at the CMG. *Runyon v. Mass. Inst. Of Tech.*, 871 F. Supp. 1502, 1509.

Even if Bourbeau were to present evidence of a disability, is claim must still fail as a matter of law. Intentional discrimination can be proved by either direct, statistical, or circumstantial evidence. Direct evidence is that evidence which, if believed, "establishes discriminatory intent without inference or presumption." *Clark v. Coats & Clark, Inc.*, 990 F. 2d 1217, 1226 (11th Cir. 1993). Only the most blatant remarks whose intent could

only be to discriminate constitute direct evidence. *Clark*, 990 F. 2d at 1226; *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989). Evidence which only "*suggests* discrimination, leaving the trier of fact to *infer* discrimination based on the evidence" is, by definition, circumstantial. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081-82 (11th Cir. 1990) (emphasis in original). Here, plaintiff presents no direct or statistical evidence of either disability or gender discrimination, but relies on circumstantial evidence.

In order to state a claim of intentional discrimination based on circumstantial evidence under the ADA, several courts have held that the shifting burden analysis used in Title VII cases is applicable. (See the argument set forth below regarding Retaliation, Count XII). See also *DeLuca v. Winer Indus. Inc.*, 53 F.3d 793, 797 (4th Cir. 1995); *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F3d 55, 57 (4th Cir. 1995). Accordingly, to state a claim of intentional discrimination due to his disability based on circumstantial evidence, Plaintiff first must establish a *prima facie* case of disability discrimination by showing (1) that Plaintiff belongs to a protected class; (b) that Plaintiff was qualified for the position he held; (c) that Plaintiff was discharged and replaced by a person outside the protected class or that he was discharged while a person outside the protected class with equal or less qualifications, or with equal or more performance problems was retained. Next, the burden of production shifts to Defendant to offer legitimate non-discriminatory reasons for its conduct. Finally, the burden of production shifts back to Plaintiff, who must show that the reasons Defendant offered were mere pretext. Although the burden of production shifts, the burden of persuasion remains at all times with Plaintiff. *St. Mary's Honor Ctr. V. Hicks*, 509 U.S. 502, 113 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir. 1982).

Plaintiff cannot make out a prima facie case because he cannot produce any evidence that he was replaced by a person outside the protected class or that when he was discharged, a person outside the protected class with equal or less qualifications was retained. *Runyon*, at 1508. The position of assistant supervisor was eliminated. No one was retained or hired to replace Mr. Theroux at all. To this day, the position of assistant

34

supervisor does not exist. No one has been hired to perform Mr. Theroux's job functions. (See also generally the arguments under Retaliation, Count XII, below).

Nor can Plaintiff prevail on the third prong of any disability discrimination: that his employer took adverse action against him because of his disability, either by direct or through the burden shifting analysis under *St. Mary's* and *McDonnell Douglas*. Plaintiff alleges only that the "City of Chicopee did terminate the Plaintiff . . . because of the Plaintiff's handicap." (Complaint ¶ 90). As demonstrated in the analysis of Count XII: Retaliation, the City of Chicopee's reason for terminating Plaintiff (more accurately for eliminating his position) was non-discriminatory: 10-15% budget cuts for all departments citywide, including the CMG. The analysis of Count XII is reiterated herein in its entirety.

This count must be dismissed.

### Count IX: 42 USC 12101, et seq.: Americans with Disabilities: Reasonable Accommodation

Plaintiff here alleges that defendants failed to provide reasonable accommodations to him: specifically a smoke-free environment (Complaint ¶¶85-86),[10] in violation of 42 USC12101, et seq. Again at the outset, there is no individual supervisor liability. *Miller v. Int'l Corp.*, 991 F2d 583, 587 (9th Cir., *cert.den.*, 114 S.C. 1049 (1993), *Grant v. Lone Star Co.*, 21 F3d 649, 651-53 (5th Cir.), *cert. den.* 115 S.Ct. 574 (1994), *Smith v. Lomax*, 45 F.3d 402, 403-04 (11th Cir. 1995), *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir.), *cert. Den.* 115 S.Ct. 666 (1994).

Moreover, as a matter of law, as demonstrated in Count VIII above, because Plaintiff cannot prove that he is disabled in accordance with 42 U.S.C. 12101, *et seq.*, there exists no duty on the part of the employer to provide any reasonable accommodation to him.

### Count X: Handicap Discrimination in Violation of G.L. c. 151 § 1(17)

---

[10] ¶84 of Count IX reavers ¶¶1-91 of the Complaint. To the extent that Plaintiff alleges that the Defendants failed to make any reasonable accommodation for alleged sexual harassment, the claim also must fail. Because the sexual harassment claim itself must fail there is no duty to make any reasonable accommodation. Evans v. Federal Express Corp., 133 F.3d 137, 140-141 (1st Cir. 1998).

35

Plaintiff here alleges that the City of Chicopee violated his rights under G.L. c. 151B § 1(17) by terminating him, a handicapped person, because of his handicap. It seeks damages from both the City and David Theroux. However, to does not allege that Theroux terminated him. Therefore, the Count must be dismissed as to Theroux to the extent that the prayer seeks damages against him.[11]

In order to prevail on a claim under M.G.L. c. 151B§ 1(17), Plaintiff must prove that he suffers from a handicap, that he is a qualified handicapped person, and that he was fired solely because of his handicap. *Labonte v. Hutchins & Wheeler*, 678 N.E.2d 853, 859 (1997), *Handrahan v. Red Roof Inns, Inc.*, 680 N.E.2d 568, 571 (1997). A person with a handicap is someone who has a physical or mental impairment which substantially limits one or more of his major life activities. Major life activities means functions such as caring for oneself, performing manual tasks, seeing, hearing, speaking, breathing, learning and working. G.L. c. 151B§§1(17), 1(20), *Cox v. New England Tel. & Tel. Co.*, 607 N.E.2d 1035, 1039 (1993), *Talbot Trading Co. v. MCAD*, 636 N.E.2d 1351, 1355 (1994).

Plaintiff, by his own testimony above, demonstrates that he was not substantially limited in one or more major life activities. (See Count VIII, above). By his own deposition testimony, Mr. Bourbeau admits that the was not limited in any major life activity. (Plaintiff's deposition pp. 17-19, 40, 71).

```
10     Q.   You mentioned in count ten of your
11     complaint that you were the subject of handicapped
12     discrimination.
13          Can you tell me what your handicap was at
14     the time?
15     A.   Seizure disorder.
```

---

[11] Additionally, there is no individual liability as set forth in Counts 1-4 and 7-9. As with Count IX, and for the reasons set forth in it, this claim must be restricted to handicap based on seizure disorder and smoking, but not seizure disorder and sexual harassment.

36

(Plaintiff's Deposition, Ex. C, 71:10-15)

Perhaps the clearest, most direct, definitive admission by Plaintiff that he is not handicapped as defined by M.G.L. c. 151 is his rebuttal to the City of Chicopee's Position Statement to the MCAD. The City's assertion and Plaintiff's response (rebuttal) are:

### D. *The Complainant was not handicapped as defined by MGL c 151*

*Correct. I was not laid off because I have a seizure disorder. My claim is that I have suffered from lack of sleep due to congestion and cough. Also that I have been subject to extreme stress since I started to confront these issues due to drastic changes in attitude towards me and ongoing harassment. High levels of stress and lack of sufficient amounts of sleep do contribute to episodes of seizure activity. Mr. Theroux was made aware of these concerns before I was hired, July 27, 2000.*

(Ex. M).

Plaintiff flatly admitted to the MCAD that he is not handicapped as defined by M.G.L. c. 151. Therefore, neither the City nor David Theroux owe him any duty under c. 151, and can violate no duty to him under c. 151.

Plaintiff cannot bear his burden of proof that he suffers from a handicap within the meaning of c.151B for the reasons given in Count VIII. Nor has he demonstrated a causal link between the smoking that occurred at the CMG and any aggravation or triggering of his seizure disorder. Nor can he bear his burden of proof that the suffered any adverse employment action because of his disability. The reasons set forth in Counts VIII and XII addressing these issues are reiterated here in their entirety.

This claim of Plaintiff also fails to satisfy the second requirement of G.L. c. 151B § 1(17): that Plaintiff was fired **solely** because of his handicap. *Labonte, Handrakan*, above. If the termination was made, at least in part, for a legitimate reason, no liability may result. It is uncontested that Plaintiff's termination resulted, at least in part, because of a 10-15% reduction in the Chicopee Maintenance Garage's (CMG) budget. A layoff

37

was inevitable. The person laid off was the person most recently hired at the CMG.[12] If Bourbeau were not terminated, an employee with greater CMG expertise and value would have been. That employee would have to have been a truck maintenance worker, an employee in a critical position. To the contrary, Bourbeau was not a critical employee. He was not replaced after his termination, rather his work was reabsorbed by Theroux and Cardin.

It is undisputed that, at the very least, Bourbeau was terminated for a mixed motive, one of which was nondiscriminatory: the fiscal problems facing the City of Chicopee requiring 10 to 15 per cent budget cuts in all departments, including the CMG. Because at least one motive for eliminating Mr. Theroux's position was non-discriminatory, the claim fails to satisfy G.L. c. 151B § 1(17).

This count must be dismissed.

### Count XI: Reasonable Accommodation: M.G.L. c. 151B § 1(17)

Plaintiff Bourbeau alleges that Defendants failed to provide reasonable accommodations to him for his disability: specifically a smoke-free environment (Complaint ¶¶93-94),[13] in violation of M.G.L. c. 151B § 17). Again, at the outset, there is no individual supervisor liability for the reasons described previously (see generally Counts I – IV, VII-X).

Moreover, as with Title VII, in Massachusetts if Plaintiff cannot prove that he is handicapped in accordance with c.151B § 1(17), therefore there exists no duty on the part of the employer to provide any reasonable accommodation to him.

### Count XII: Retaliation

In this count Plaintiff alleges that the city of Chicopee retaliated against Plaintiff Bourbeau in violation of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*, and

---

[12] Plaintiff Bourbeau had worked for the City for many years, but for the CMG for just under 2 years when he was terminated.

[13] ¶92 of Count 11 reavers ¶¶1-91 of the Complaint. To the extent that Plaintiff alleges that the Defendants failed to make any reasonable accommodation for the alleged sexual harassment, the claim must fail. Because the sexual harassment claim itself must fail, there is no duty to make any accommodation. *Dziemba v. Warner and Stackpole, LLC*, 56 Mass.App.Ct. 397, 405, 778 N.E.2d 927 (2002). It must also fail because Plaintiff did not raise this issue in his MCAD complaint. G.L. c. 151B§ 5, 840 CMR1.03, *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996), *Silva v. Hit or Miss*, 73 F.Supp. 2d 39 (D. Mass. 1999).

Mass. G.L. c. 151BG. The count does not specify the manner in which the retaliation occurred, however his MCAD filing and deposition make it clear that the alleged reasons are:

1. While Bourbeau was out on sick leave the locks were changed on the CMG offices.
2. He was requested to return the CMG truck while he was out on sick leave.
3. While Bourbeau was out on sick leave he was terminated from his position at CMG.

At the outset, it is noted that David Theroux is not alleged to have committed the retaliation alleged in Count XII. His name does not appear in any of Paragraphs 93-95 which assert retaliation. However, in the prayer following Count XII, judgment is sought against David Theroux.

For this reason alone, Count XII should be dismissed against David Theroux.

Count XII should further be dismissed because Plaintiff has "failed to establish the requisite causal link between his protected activity and the alleged [retaliation and] discharge." *Lewis v. Gillette Co.*, 22 F.3d 22 (1st Cr. 1994), *Hoeppner v. Crotched Mountain Rehba. Ctr, Inc.*, 31 F.3d 9 (1st Cir. 1994)

Plaintiff has no direct evidence of retaliatory animus. Therefore, a three step analysis is to be followed in considering a wrongful discharge/retaliation claim. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973); *Runyon v. Mass. Ins. Tech.*, 871 F. Supp. 1502 (D. Mass. 1994). This standard is essentially the same under both Title VII and M.G.L. c. 151B. *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 (1st Cir. 1996), *MacCormick v. Boston Edison Co.*, 423 Mass. 652, 672 N.E.2d 1, 7 (1996), *Blare v. Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 444-445, 646 N.E.2d 111 (1995).

Plaintiff cannot create a genuine issue of material fact to survive summary judgment as to any of the three steps.

Under this burden-shifting framework, the plaintiff must first present a *prima facie* case of discrimination. Establishment of the *prima facie* case creates a presumption that the employer engaged in impermissible discrimination. *LeBlanc v. Great American Insurance Co.*, 6 F.3d 836, 842 (1st Cir.1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct.

1398, 128 L.Ed.2d 72 (1994). Once the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant, who may rebut the presumption by producing a legitimate, nondiscriminatory reason for the negative employment action. *Id.* at 802; *see also Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1983). If the defendant articulates such a reason, the *McDonnell Douglas* presumption "drops out of the picture." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 510-511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993); *LeBlanc,* 6 F.3d at 842. For the claim based upon Massachusetts law, the defendant must also show that its proffered reason is "credible." *Brunner v. Stone & Webster Engineering Corp.,* 413 Mass. 698, 700, 603 N.E.2d 206 (1992).[14] Plaintiff then must produce sufficient evidence, direct or indirect, to show that the reasons offered by the defendant constitute a pretext for legally prohibited discrimination. *Woods v. Friction Materials Inc.,* 30 F.3d 255, 260 (1st Cir.1994). (*Woods II*) At all times, the burden of ultimate persuasion rests with the plaintiff. *St. Mary's,* 509 U.S. at 508, 113 S.Ct. at 2747-48. Therefore, if the plaintiff fails to demonstrate illegal discrimination, the challenged employment action must stand. *Id.,* 113 S.Ct. at 2752 n. 6. *Runyon,* above, at 1508.

### Step One

Plaintiff's initial burden of establishing a *prima facie* case of discriminatory retaliation is not an onerous one. *McDonnell,* 4111 U.S. at *Runyon,* at 1508. However, to sustain it Plaintiff must show that after Plaintiff was discharged, "his position remained open and the employer continued to seek applicants from persons of complainant's qualifications," *McDonnell,* 411 U.S. at 802, 93 S.Ct. at 1824, *Hebert v. Mohawk Rubber co.,* 872 F.2d 1104, 111 (1st Cir. 1989), *Woods v. Friction Materials, Inc.,* 836 F. Supp. 899, 903 (D. Mass. 1993), aff. 30 F3d 255 (1st Cir. 1994), *Runyon,* at 1508, *Zhang v. Mass. Inst. Of Tech.,* 46 Mass.App.Ct 597, 708 N.E.2d 128 (Mass.App. 1999), citing *Beal v. Selectmen of Hingham,* 419 Mass. 535, 544, 646 N.,E.2d 131 (1995).

In the instant case, Plaintiff cannot prove that the position he held was kept open, and that other applicants were sought to fill it, because it simply did not happen.

---

[14] "[A] reviewing court 'need not linger long over the question of whether [the plaintiff] in fact established a prima facie case if the defendant has met its burden of articulating a legitimate non-discriminatory reason for its actions," *Morgan v. Mass.Gen. Hosp.,* 901 F.2d 186 (1st Cir. 1990).

40