# EXHIBIT "D"

**EXHIBIT "D"**

*Law Office of*

# Alan J. Black

1383 Main Street
Springfield, MA 01103

Telephone (413) 732-5381
Fax (413) 739-0446

\*\*Admitted in MA, CT, & CA

CERTIFIED MAIL -
RETURN RECEIPT REQUESTED

April 8, 2004

Attorney Jack St. Clair
Law Department
17 Springfield Street
Chicopee, MA 01013

Re:   Claimant: Alan Bourbeau
      Dates of Loss: June 27, 2000 through July 1, 2002

Dear Attorney St. Clair:

    Please be advised that this is a written presentment pursuant to Massachusetts General Law, Chapter 258, Section 4, the Massachusetts Tort Claim Act; 29 United States Code, Section 2612, The Family and Medical Leave Act; Massachusetts General Law, Chapter 151B, discrimination based upon sexual harassment and disability, and 42 United States Code, Section 12208, The American Disabilities Act. The claimant is Mr. Alan Bourbeau. Mr. Bourbeau claims damages arising from injuries suffered at the hands of the Town of Chicopee, Central Maintenance Garage on or about July 10, 2000 through July 1, 2002. This incident started while Mr. Bourbeau was in the employ of the Central Maintenance Garage in Chicopee, Massachusetts. Mr. Bourbeau was unlawfully terminated, sexually harassed by being forced to work in a hostile work environment and discriminated against based upon his medical disability while he was employed by The City of Chicopee's Central Maintenance Garage. This discrimination took place without reasonable accommodations being made by the City for the benefit of Mr. Bourbeau.

    On June 27, 2000, Mr. Bourbeau was hired as the Assistant Supervisor of Maintenance for the City of Chicopee at the Central Maintenance Garage. During the second interview, Mr. Bourbeau made his immediate supervisor, David Theroux aware of his medical concerns Mr. Bourbeau made Mr. Theroux aware that working near smokers exacerbated a pre-existing seizure disorder and asked for a smoke free work space. The City in effect refused to make this reasonable accommodation. After a year of sharing a small office with two smokers, Mr. Bourbeau complained further that this smoking was affecting his health, causing him constant throat and lung irritation. Even though the City

of Chicopee had a no smoking policy, the City never made this reasonable accommodation as the smoking continued. At Mr. Bourbeau's annual physical on December 6, 2001, Mr. Bourbeau's doctor insisted that he change his work situation By January of 2002, the employees continued to smoke and leave cigarettes lit, openly flaunting this. Due to his complaints, his working relationship with them also deteriorated. Mr. Bourbeau began being left out of important work information, meetings and other work related activities. Messages were being taken and not given to Mr. Bourbeau.

On March 15, 2002, Mr. Bourbeau spoke with his supervisor, Mr. Theroux about how this smoking affected his health. Mr. Bourbeau explained that he was experiencing serious coughing, which was keeping him awake at nights. Mr. Bourbeau related to Mr. Theroux his concerns about how this smoking would affect his seizure disorder, which was becoming worse with the stress and lack of sleep. Mr. Theroux agreed to meet with Mr. Bourbeau on March 19, 2002 and stated that he would speak to Ms. Cardin about the smoking. On March 19, 2002, Mr. Theroux ended up unavailable for this meeting. Finally, he merely stated that Ms. Cardin was hard to get along with and that Mr. Bourbeau would not be able to change her now.

On March 29, as Ms. Cardin's direct supervisor, Mr. Bourbeau asked Ms. Cardin to stop smoking and she merely stated that she would not and to "go ahead and write her up" because it would not matter because "Mr. Theroux would back her." On April 2, 2002 when Mr. Bourbeau attempted to speak with Mr. Theroux about the smoking situation, he became very violent, yelling screaming and actually advancing towards Mr. Bourbeau. Another argument occurred later in the day exacerbating Mr. Bourbeau's seizure disorder even further. Mr. Bourbeau was extremely stressed at this juncture and was experiencing involuntary tremors of his right jaw and right hand. Mr. Bourbeau's doctor took him out of work from April 3, 2002 to April 8, 2002.

In addition to the harassment on a daily basis regarding the smoking and his health, a relationship between Mr. Bourbeau's supervisor, Mr. Theroux and a clerk, Ms. Cardin was openly intimate and inappropriate. Inappropriate conduct such as heaving kissing and touching in an intimate fashion, took place in the open where Mr. Bourbeau and others could see. The result of this relationship was to exclude Mr. Borbeau and others from interacting with them. Multiple situations arose where she was given preferential treatment and favors.

This relationship between Mr. Theroux and Ms. Cardin began in approximately April of 2001. Mr. Borbeau began witnessing Ms. Cardin's hands in Mr. Theroux's lap, heavy kissing, grabbing each other below the counter while other employees were in the room. Mr. Bourbeau told them that it made me uncomfortable to see this and Mr. Bourbeau explained to them that he should not have to deal with that in the work place. These incidents kept on occurring and began including Ms. Cardin shirking her duties and spending all of her time in Mr. Theroux's office. Mr. Bourbeau would walk into Mr. Theroux's office and would see Ms. Cardin and Mr. Theroux holding and kissing each other. Again Mr. Bourbeau would reiterate his objection to this behavior. This behavior

continued until May 22, 2002 when Mr. Bourbeau met with Rich Merchant of Human Resources to try to resolve these issues. It was Mr. Merchant who suggested that Mr. Bourbeau file complaints against Mr. Theroux and Ms. Cardin. Two days after this meeting, on May 24, 2002, the locks were changed effectively preventing Mr. Bourbeau from coming to work.

On May 7, 2002, when Mr. Theroux came back from his vacation he screamed at Mr. Bourbeau to go home and leave. At this time, Mr. Bourbeau went to the physician's office and Dr. Koppleman ordered antibiotics and treatment for pneumonia. At this time, Dr. Koppleman kept Mr. Bourbeau out of work. Mr. Bourbeau notified Mr. Theroux of this on May 15, 2002. Due to this seizure activity exacerbated by the stressful work environment and the cough, Dr. Koppelman kept Mr. Bourbeau out of work until June 10, 2002, While Mr. Bourbeau was recovering, the City of Chicopee decided that his position would be deleted even though Mr. Bourbeau worked for the City of Chicopee for 17 years without complaint. This act constituted a willful violation of the Family and Medical Leave Act.

The above-enumerated unlawful activities performed by the City of Chicopee and its employees constituted emotional abuse, both intentional and negligent, inflicted upon Mr. Bourbeau and were done without legal justification or excuse. Furthermore, the injuries that Mr. Bourbeau sustained were a proximate result of the actions of the City of Chicopee Central Maintenance Garage, the City of Chicopee, and the Mayor of the City of Chicopee.

As a direct and proximate result of the illegal acts, omissions and procedures of the City of Chicopee Central Maintenance Garage, the City of Chicopee, and the Mayor of the City of Chicopee and its officers, Mr. Bourbeau has suffered severe emotional distress. Ever since these incidents at work, Mr. Bourbeau has been suffering from Posttraumatic Stress Disorder exhibiting symptoms including but not limited to distressing recollections of the event, distressing dreams of the event, experiencing the event, psychological distress at exposure to events that resemble the traumatic event, diminished interest in activities, feelings of detachment from others, difficulty falling asleep, irritability, difficulty concentrating and hyper vigilance. Finally, due to the severity of the event, Mr. Bourbeau is currently seeing both a psychologist and being treated psychopharmicologically by a psychiatrist.

Due to the negligence of the City of Chicopee, Mr. Bourbeau has been injured and has certain claims which are guaranteed under the laws of the Massachusetts including but not limited to, claims of negligence, negligent training and supervision, intentional infliction of emotional distress, and negligent infliction of emotional distress.

These claims arise from the following:

Failure to properly train its employees;

Failure to properly discipline and sanction its employees for improper conduct and thereby deterring this misconduct;

3

Failure to promptly and thoroughly investigate reported incidents;

Failure to supervise and negligent supervision of its employees;

A failure to provide a hostile free work environment; and

A failure to provide a work environment free from harassment and discrimination.

WHEREFORE, Mr. Bourbeau makes a demand upon the City of Chicopee in the amount of One Hundred Thousand Dollars ($100,000.00) for violating the Tort Claims Act and Five Hundred Thousand Dollars ($500,000.00) for violating the American Disabilities Act, the Family and Medical Leave Act and M.G.L. 151B.

Please be advised that the claimant is prepared to litigate this matter if he is not offered a reasonable settlement.

We request that you preserve all originals and copies of correspondence, notes and memoranda pertaining to any of the events alleged above including the entire file belonging to the employee.

Thank you for your anticipated cooperation in this matter.

Sincerely,

Attorney Alan Jay Black