one thing affected each other. The lack of a smoking policy and accommodation caused illness which caused stress which caused an exacerbation of the plaintiff's seizure disorder and caused him a further disability, suffering from a mental Illness, Post Traumatic Stress Syndrome and stress induced depression.

The deposition that is referred to and copied into the defendant's motion for summary judgment refers to a period of around the year 2000 where medication was controlling the defendant's seizure disorder. There is no issue that the defendant Theroux was advised of the defendant's seizure disorder. With callousness the defendant Theroux testified in his deposition that he realized this was a violation of City policy but he allowed smoking anyway in spite of the fact that the defendant knew of the Plaintiff's issue.

Dr. Koppleman in her affidavit and disclosure was clear as to issues of causation. Firstly, Dr. Koppleman tells us that the plaintiff complained of respiratory problems due to second hand smoke and the defendant's refusal to accommodate his problem causes stress, increased seizure activity and then mental illness.

Koppleman begins her affidavit by explaining that way back in December of 2001, he was beginning respiratory problems related to breathing in second hand smoke from work. Eventually this led to bilateral small nodules appearing on his lung. Dr. Koppleman attributes this to Pneumonia precipitated by his exposure to second hand smoke in combination with a decreased immune status due to stress. It was at this time that Mr. Bourbeau was referred to a therapist for a diagnosis of PTSD, panic disorders and stress Induced depression from activities relating to work.

With the increased stress came increased seizure activity. Dr. Koppleman notes as well as the plaintiff in his deposition that from the time of his first seizure until 2002 he was seizure free. Then due to increased stress at work due to primarily the smoking issue and due to the sexual antics of his supervisor and Ms. Cardin he began to experience increased neurological activity causing complaints of intermittent problems with uncontrollable tonic arm activity, loss of concentration, memory lapses and an increased occurrence of migraine headaches.

Kr. Koppleman relates this Increase seizure activity to stress related to the smoking and other issues at work.

It cannot be said in this case as opposed to Murphy v. UPS that the above described disabilities did not substantially limit one or more of the plaintiff's major life activities. Mr. Murphy merely had to take his medicine to function normally. Alan Bourbeau was paralyzed and could not function at all, which is why Dr. Koppleman kept on writing Mr. Bourbeau notes ordering that he not go to work. Further during this time Mr. Bourbeau was experiencing tremors in his hands preventing him from writing, sleep problems and sexual impotence all related to his disability caused by his working environment. Mr. Bourbeau's disability was certainly not limited to his inability to perform just one job. He could not work at all.

This is not a situation such as illustrated in Murphy where the plaintiff in that case was terminated because his blood pressure was over the limit for his particular job. This was held to be a legitimate reason and therefore the court held that there was no adverse reaction against the plaintiff. Id. In the case at hand although the City of Chicopee is claiming that the reason for the termination of

the defendant was a 10-15 percent budget cut for all departments. The plaintiff alleges in his affidavit that that there were six people let go at this time. The plaintiff further avers that out of the six, one retired and four were given jobs back with the City. The plaintiff, therefore was the only person at this time to lose his job permanently. The plaintiff further averred in his affidavit that he should have had a five-year call back period and that specifically a machinist at the fire department opened up that he was never called. The labeling of the action against the plaintiff was a pretext for what was truly an involuntary dismissal.

I. **The Defendant's Motion for Summary Judgment on the Count Alleging a violation of 42 USC 12101, et seq.: American with Disabilities: Reasonable Accommodation must fail because there Is an Issue of material fact for the jury as to whether the plaintiff was disabled.**

For the reasons argued above, there is a genuine issue of material fact for the jury whether the Plaintiff was disabled or not. Therefore, under 42 U.S.C. 12101, et seq., there existed a duty on the part of the employer to provide a smoke free and stress free environment for Mr. Bourbeau. Not only was this not done In contravention to the Chicopee Municipal Policy, Mr. Theroux flaunted the policy in Mr. Bourbeau's face and stated that he knew of the policy and disregarded it anyway.

J. **The Defendant's Motion for Summary Judgment on the Count Alleging a violation of G.L. c. 151 Sec. 1(17) must fail as there is a genuine Issue of material fact for the jury to decide.**

In order to prevail on a claim under M.G.L. c. 151 B, Section 1(17), the analysis is similar to that undertaken in section I above; the Plaintiff must prove

that he suffers from a handicap, that he is a qualified handicapped person, and that he was fired solely because of his handicap. Labonte v. Hutchins & Wheeler, 678 N.E. 2d 853, 859 (1997), Handrahan v. Red Roof Inns, Inc., 680 N.E. 2d 568, 571 (1997). Under the Massachusetts Statute the courts have held like the federal courts that the handicap is someone who has a physical and mental impairment, which substantially limits one or more of his major life activities. Major life activities means functions such as caring for oneself, performing manual tasks, seeing, hearing, speaking breathing, learning, and working. G.L. c. 151B Section 1(17), 1(20), Cox v. New England Tel & Tel Co., 607 N.E. 2d 1035, 1039 (1993) Talbot Trading Co. v. MCAD 636 N.E. 2d 1351, 1355 (1994).

Dr. Koppleman in her affidavit and disclosure was clear as to issues of causation. Firstly, Dr. Koppleman tells us that the plaintiff complained of respiratory problems due to second hand smoke and the defendant's refusal to accommodate his problem causes stress, increased seizure activity and then mental illness.

Koppleman begins her affidavit by explaining that way back in December of 2001, he was beginning respiratory problems related to breathing in second hand smoke from work. Eventually this led to bilateral small nodules appearing on his lung. Dr. Koppleman attributes this to Pneumonia precipitated by his exposure to second hand smoke in combination with a decreased immune status due to stress. It was at this time that Mr. Bourbeau was referred to a therapist for a diagnosis of PTSD, panic disorders and stress induced depression from activities relating to work.

With the increased stress came increased seizure activity. Dr. Koppleman notes as well as the plaintiff in his deposition that from the time of his first seizure until 2002 he was seizure free. Then due to increased stress at work due to primarily the smoking issue and due to the sexual antics of his supervisor and Ms. Cardin he began to experience increased neurological activity causing complaints of intermittent problems with uncontrollable tonic arm activity, loss of concentration, memory lapses and an Increased occurrence of migraine headaches.

Kr. Koppleman relates this Increase seizure activity to stress related to the smoking and other issues at work.

It cannot be said that the above-described disabilities did not substantially limit one or more of the plaintiff's major life activities. Mr. Murphy merely had to take his medicine to function normally. Alan Bourbeau was paralyzed and could not function at all, which is why Dr. Koppleman kept on writing Mr. Bourbeau notes ordering that he not go to work. Further during this time Mr. Bourbeau was experiencing tremors in his hands preventing him from writing, sleep problems and sexual impotence all related to his disability caused by his working environment. Mr. Bourbeau's disability was certainly not limited to his inability to perform just one job. He could not work at all.

In the case at hand although the City of Chicopee is claiming that the reason for the termination of the defendant was a 10-15 percent budget cut for all departments. The plaintiff alleges in his affidavit that that there were six people let go at this time. The plaintiff further avers that out of the six, one retired and four were given their jobs back. The plaintiff, therefore was the only person at this time to lose his job permanently. The plaintiff further averred in his affidavit that

he should have had a five-year call back period and that specifically a machinist at the fire department opened up that he was never called. The labeling of the action against the plaintiff was a pretext for what was truly an involuntary dismissal.

### K. The Defendant's Motion for Summary Judgment on the Count Alleging a violation of G.L. c. 151 Sec. 1(17): Reasonable Accommodation must fail as there Is a genuine Issue of material fact for the jury to decide.

For the reasons argued above, there is a genuine issue of material fact for the jury whether the Plaintiff was disabled or not. Therefore, under G.L. c. 151 Sec. 1(17)., there existed a duty on the part of the employer to provide a smoke free and stress free environment for Mr. Bourbeau. Not only was this not done In contravention to the Chicopee Municipal Policy, Mr. Theroux flaunted the policy In Mr. Bourbeau's face and stated that he knew of the policy and disregarded it anyway.

### L. The Defendant's Motion for Summary Judgment on the Count Alleging a violation of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., and G.L. c. 151 : Retaliation must fail as there Is a genuine Issue of material fact for the jury to decide.

In order to establish a claim of retaliatory discharge under Title VII and M.B.L. 151B plaintiff must show by a preponderance of the evidence that he (1) engaged in a protected activity as an employee, (2) he was subsequently discharged from employment, and (3) there was a causal connected between the protected activity and the discharge. Hoppner v. Croteched Mountain Rehabilitation Ctr., (1st Cir. 1994)

There is a genuine issue of material fact regarding the circumstances of the plaintiff's discharge, therefore this case must go forward to trial and allowed to be

presented to the jury. First of all the plaintiff had been complaining about lack of accommodation and sexual harassment for some period of time before May of 2002 and was terminated while on medical leave for issues resulting from these complaints regarding sexual harassment and issues involving his seizure disorder which was a direct cause from the smoking.. He had just filed a MCAD claim and was then terminated and was never hired back.

The defendants fail to survive summary judgment because there is a genuine issue of material fact of a causal link between his protected activity and the alleged retaliation and discharge. The person that the plaintiff was complaining about was still was his direct supervisor and admittedly made the decision to terminate the plaintiff's position alone. He testified that was "annoyed" with the plaintiffs' constant complaining.

The defendants rely on the fact that there was 10-15% budget cuts made at the time but according to the plaintiff in his affidavit there were only six employees who lost their jobs. The plaintiff put in his affidavit that four of these six got either their jobs back or other jobs back. The fifth person retired. Therefore only the defendant permanently lost his job. Further, the Employer was contractually bound to recall the plaintiff if jobs became available. The plaintiff knew of a job, which was available as a mechanic with the fire department. The plaintiff was never offered that job or any job with the City.

The fact there was budget cuts going on at the time is not the end of the matter. We still have to examine all the factors revolving around the budget cuts to determine if this issue served as the pretext for the unlawful discrimination. McDonnell Douglas Corp. v. Green 411 U.S. 792, 804-805 (1973). This was to be

determined to be a factual issue for the jury. Id. Even If we get to the three step analysis as announced in McDonnell Douglas the defendant fails in his motion for summary judgment on this issue. The first stage the complainant In a Title VII trial must carry the initial burden of establishing a prima facie case of racial discrimination. This may be done by showing (1) that he belongs to a racial minority; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, he was rejected; and (4) that, after his rejection, the position remained open and the employer continued to see applicants.

As this court sees, McDonnell Douglas v. Green was an unlawful rejection case not an unlawful hiring case and the McDonnell Court specifically stated that "The facts necessarily will vary In Title VII cases and the specification above of the prima facie proof required from respondent Is not necessarily applicable In every respect to differing factual situations." Id. The Defendant relies heavily on the fact that the position was eliminated and never reinstated. First of all we would argue that the analysis on an unlawful termination case would be different than an unlawful hiring case and we still need to analyze the budget cut argument to determine if that was merely a pretext. The fact that the person who was the subject of the plaintiff's complaints was the one who directly fired the Plaintiff is suspicious.

There is a factual dispute as to whether a prima facie case was established. The defendant was the subject of sexual harassment and handicap disability discrimination, which caused both serious physical and psychological injuries. He then complained about this to the person who was his supervisor and the person

who was smoking in front of the plaintiff and the person having the sexual encounter with Cardin. This person then solely decided to terminate the defendant's position. There is a factual issue to be determined by the jury

The moving party then needs to articulate a legitimate nondiscriminatory reason for the employee's termination. The City stated it was because of budget cuts. Then the employer gets to show whether this reasons was pretextual. This is a factual issue for trial. McDonald Douglas v. Green. Id. The Plaintiff must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a cover-up for a racially discriminatory decision. Id. at 805. This opportunity must be given to the plaintiff at trial. Id. This would be the same under G. L. 151B Lynn Teachers Union, Local 1037 v. Mass. Commission Against Discrimination, 406 Mass. 515, 520 (1990).

### M. The Defendant's Motion for Summary Judgment on the Counts alleging a violation of various statute of limitations must fail because there remains Issues of material fact to be heard by the jury.

The defendant mistakenly relies on National Railroad passenger Corporation v. Morgan, 536 U.S. 101, 114-116 (2002). It is true the holding in that case states that discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify and constitute a separate actionable "unlawful practice" each of which are discrete acts which must individually meet the statute of limitation requirements. There is no issue that the filing of the retaliatory termination claim meets the statute of limitation.

As to the other acts, the Morgan court specifically stated that Hostile environment claims are different In kind from discrete acts. Their very nature involves repeated

conduct. The repeated nature of the harassment or its intensity constitutes evidence that management knew or should have known of its existence" Id. This type of unlawful employment practice therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Harris v. Forklift Systems, Inc. 510 U.S. 17, 21 (1993). Thus "when the workplace is permeated with 'discriminatory intimidation, ridicucle and insult,' that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII Is violated. Id. By analogy reasonable accommodation would fall under the above exception as constituting a continuing course of conduct.

### N. The Defendant's Motion for Summary Judgment as to the City of Chicopee on the Intentional Infliction of Emotional Stress claim succeeds against the City but not against the Defendant Theroux

While public employers, like the City of Chicopee, may not be held liable for intentional torts committed by their employees, the employees may be personally liable for nay harm they have caused. Morash & Sons v. Commonwealth, 363 Mass. 612, 615 (1973). The claim against Theroux must go to the jury.

### O. The Defendant's Motion for Summary Judgment as to Negligent Infliction of Emotional Stress must fail as the presentment letter alleged sufficient detail to be a proper presentment letter.

The defendant City of Chicopee alleges a defective presentment letter because some of the acts alleged were two years prior to the letter being written. The letter was written on April 8, 2004 and there some acts alleged before April 8, of 2002. This claims fails for several reasons. First of all there is plenty of

specificity in the letter and plenty of acts alleged occurring after April 8, 2004 to give adequate notice to the City of Chicopee. While a presentment letter should be precise In Identifying the legal basis of a plaintiff's claim, . . . letters . . . were not so obscure that educated public officials should find themselves baffled or misled with respect to his assertion of a claim for negligent Infliction of emotional distress... Gilmore v. Commonwealth 417 Mass. 718 721 (1994).

Also for the reasons discussed above in section M above, in that the allegations of neglect are associated with a continuing act of conduct due to hostile conditions and the failure of the City to correct these issues up until the act of termination, the Commonwealth had adequate notice of negligent acts within the two year period required under the law, including the acts of Theroux on May 7, 2002 after the City had been notified of this ongoing problem; including the firing of May 24, 2002. The letter is clear that the acts alleged were ongoing and were taking place up until the May 24, 2002 date.

### P. The Defendant's Motion for Summary Judgment as to Individual liability of Mr. Theroux also fails as there are genuine Issues of material fact to be determined by the jury.

With respect to 151B, It provides for individual liability where any person acts in a way that interferes with the rights secured under G.L.c. 151B. In the case at hand if the jury determines that Theroux interfered with Plaintiff's 151B rights, then Mr. Theroux can be individually liable. Meara v. Bennett, 27 F. Supp. 2d 288 (1998); Ruffino v. State Street Bank and Trust Co. 908 F. Supp. 1019, 1048 (D. Mass. 1995). The same is true for actions under FMLA.

THE PLAINTIFF

Alan Bourbeau

By: _____
His Attorney
Alan J. Black, Esquire
1383 Main Street
Springfield, MA 01103
(413) 732-5381

# TABLE OF CONTENTS

A.   Affidavit of Alan Bourbeau

B.   Affidavit of Claudia Koppelman, M.D.

C.   Complaint

D.   Memo of Agreement to City of Chicopee

E.   MCAD Complaint and Supporting Documents

F.   Portions from Alan Bourbeau's Deposition

G.   Portions from David Theroux's Deposition

H.   Portions from Ronald Ryczek's Deposition

I.   Portions from Richard Merchant's Deposition

J.   Presentment Letter

UNITED STATES DISTRICT COURT
DISTRICT COURT
DISTRICT OF MASSACHUSETTS – WESTERN SECTION

CIVIL ACTION NO.: 04-30107

ALAN BOURBEAU
PLAINTIFF,
V.
CITY OF CHICOPEE et al
DEFENDANTS.

## CERTIFICATE OF SERVICE

I, ALAN J. BLACK, attorney for the Plaintiff, hereby certify that I have served a copy of the attached Plaintiff's Opposition to the Defendants' Motion for Summary Judgment by mailing first class postage paid, on this 12t$^h$ day of April 2006, to John A. Cvejanovich, Esq. 1350 Main Street, Springfield, MA 01103 and William O'Grady, Esq., Market Square, 17 Springfield Street, Chicopee, MA 01013.

Alan J. Black, Esq.