UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-30107-KPN

|  |  |
|---|---|
| ALAN BOURBEAU, | ) |
|         Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF CHICOPEE a Municipal | ) |
| Corporation duly established under | ) |
| The laws of the Commonwealth | ) |
| Of Massachusetts, | ) |
| | ) |
| DAVID THEROUX   In his official | ) |
| Capacity as supervisor of the City of | ) |
| Chicopee's Central Maintenance | ) |
| Garage | ) |
|         Defendants | ) |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF FACTS

Plaintiff brought a claim for discrimination pursuant to 42 U.S.C. 2000e and M.G.L. c. 151B before the Massachusetts Commission Against Discrimination (MCAD). The Commission found insufficient evidence of discrimination, and Plaintiff appealed. During the pendency of the appeal Plaintiff withdrew his MCAD claim to pursue a civil suit.

Plaintiff alleges repeated incidents of sexual behavior between David Theroux and Debra Cardin. There were seven major incidents, which the plaintiff alleged he remembered at his deposition, but states that incidents of sexual contact between Theroux and Cardin occurred almost daily. There were seven specific incidences of harassment that the plaintiff remembered and specified at his depositions, however, there were many more which occurred on almost a daily basis.

Not only did the plaintiff witness inappropriate and objectionable conduct between Theroux and Cardin, he was subject to retaliation for complaining about this conduct. This conduct took place when they knew the plaintiff was around and they deliberately engaged in this conduct so that the plaintiff had to see it. This conduct continued long after it was made known to the plaintiff that this sexual conduct bothered the plaintiff. The plaintiff alleges that Ms. Cardin repeatedly rubbed his back and when he told Theroux about this behavior, he was ignored. Theroux and Cardin denied any intimate sexual relationship but another employee testified that this was going on for all to see.

The plaintiff testified that his job was circumvented when he began to complain to Theroux about this activity and about the smoking. The plaintiff also told Theroux about Cardin's activities of touching him and he said to him that if you don't like it here is the door. Mr. Theroux essentially testified that he was aware that smoking was unlawful but he allowed it anyway and he allowed it in front of the plaintiff even though he was told that it was exacerbating the plaintiff's health issues.

Mr. Bourbeau was left out of decisions and his job was gradually being ignored because of his complaints. The Plaintiff was left out of a lot of activities, such as not being allowed to go certain functions, and not being able to contact certain parts' suppliers, which was essential to his job. Further, Ms. Cardin had special privileges such as being allowed to leave whenever she wanted and was allowed to drive Mr. Theroux's vehicle. A truck had come in for service and no one made Mr. Bourbeau aware of it and it was therefore not worked on and Theroux yelled him at for not having someone service the vehicle.

Mr. Theroux basically had other employees report to him even though it was Bourbeau's job to supervise these employees. Ms. Cardin was allowed to work less than other employees because of her relationship with Mr. Theroux.

Dr. Koppleman, the plaintiff's physician, opined a causal relationship between the stress at work and his exposure to secondary smoke to a variety of illnesses including pneumonia and stress, which could have contributed to the seizures the plaintiff was suffering from. In her disclosure and in her attached affidavit she states that On June 13, 2002 Mr. Bourbeau underwent a CAT Scan of his chest, which revealed single bilateral small pleural nodules.

Dr. Koppelman opined that these nodules represented Bronchiectasis Obliterating Organizing Pneumonia, precipitated by his exposure to secondary smoke in combination with a decreased immune status due to stress. She further opined that Mr. Bourbeau suffered from PTSD and stress induced depression, which in her medical opinion was directly and causally related to the stress at work.

She further opined that with the increased stress at work, Mr. Bourbeau began to experience increased neurological activity causing complaints of intermittent problems with uncontrollable tonic arm activity, loss of concentration, memory lapses and an increased occurrence of migraine headaches.

It was her opinion that that the plaintiff's neurological manifestations of stress, presented as an increase in seizure activity most probably caused episodes of hypoxemia. She also opined that the plaintiff was suffering with increased gastoesophageal reflux problems as a response to the stress. Dr. Koppleman never stated in her note, defendants' exhibit K that there was no causal connection between the smoking and the seizure symptoms. The "not likely" (if that is what it says) was clearly referring to something else and not the seizures.

The plaintiff avers in his affidavit that he attended a June 27, 2002 meeting with the Mayor who stated in person that the budget cuts were approximately 3 1/2 per cent across the board. This meeting was with the six people that had lost their jobs. Out of these six people only the plaintiff permanently lost his job. Four of the six got rehired by the City and one retired. The City of Chicopee did not have a valid nondiscriminatory basis for eliminating the plaintiff's position; it was an excuse to get rid of the plaintiff because of his complaints.

The plaintiff was locked out of his place of employment on May 24, 2002. Acts of discrimination against the plaintiff continued up until the date he was locked out and include his being fired. Therefore this constitutes continuing acts of discrimination and the claims filed in the MCAD were filed timely. Although

the plaintiff's position was not officially filled, the plaintiff has information that Norman Labonte who is currently hired as a Motor Equipment Repairman and is the Union Steward has taken over the actual functions of the his job.

The plaintiff's illnesses from the stress at work including his seizure disorder prevented him from sleeping, and from doing such regular activities such as writing due to the tremors in arms. He could not use his CDL license to become a truck driver due to his seizures. This is one course of employment the plaintiff was pursuing.

Finally, his sexual relationship with his wife became non-existence due to the stress, the PTSD and the seizures.

The plaintiff has sought and received permission to sue both from the Equal Employment Opportunity Commission and the Massachusetts Commission Against Discrimination. Further the plaintiff has written a presentment letter pursuant to Massachusetts General Law, Chapter 258, Section 4. This letter was responded to by the City of Chicopee in which they denied coverage for the plaintiff's claim.

## STATEMENT OF DISPUTED FACT

Pursuant to Local Rule 5.1, plaintiff attaches and herein incorporates to this Opposition to Defendant's Motion for Summary Judgment a Statement of Disputed Facts supported by the record evidence and the Affidavit of the Plaintiff.

## ARGUMENT

### A. Summary Judgment Standard In Employment Discrimination Cases

Summary Judgment will be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 c. Sec. <u>Magee v. United States</u>, 121 F.3d 1.3 (1st Cir. 1997). Once the moving party has demonstrated that no genuine issues of material fact exist, the burden is shifted to the non-moving party to contradict the demonstration and present specific provable facts, which establish that there is a triable issue. <u>Aponte Matos v. Toledo Davila</u>, 135 F. 3d 182, 186 (1st Cir. 1998).

Under Title VII, to survive summary judgment, a plaintiff must first establish a prima facia case of discrimination and then, secondly, show that there is direct or circumstantial evidence which indicates that the legitimate reasons for the employment action articulated by the Defendant are a pretext for discrimination. <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (l981). In establishing the federal claim, plaintiff must show, both that the defendant's reasons were false, and that the discrimination was the real reason. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 515 (l993).

By contrast, in interpreting M.G.L. c. 151B, the Massachusetts Supreme Judicial Court (SJC) has held that the strict pretext-plus standard exacted upon plaintiff's bringing Title VII claims is inappropriate. As was stated by the SJC:

> Once a plaintiff has established a prima facia case and further shows either that the employer's articulated reasons are a pretext or by direct evidence that the actual motivation was discrimination, the plaintiff is entitled to recovery for illegal discrimination under G.L. c. 151B. <u>Wheelock College v. Massachusetts Commission Against Discrimination</u>, 371 Mass. 130, 138, (1976). At the third stage in our order of proof, if the fact finder concludes that the plaintiff has proved that the employer's reasons are a

>pretext, then the plaintiff prevails. If the fact finder concludes that the plaintiff did not prove pretext then the defendant prevails. Direct proof of discrimination is not required.

Blare v. Husky Injections Molding Systems, 419 Mass. 437 (l995). Despite these two different standards, what both the federal and state courts recognize is that review will be most searching in cases, such as this, that turn upon the issue of motive or intent. These difficult questions are most suited for jury determinations as proof is generally based upon inferences that must be drawn, rather then on the proverbial smoking gun. Rosey v. Roche Products, Inc., 880 F. 2d 621, 624 (l989) (summary judgment vacated and case remanded in Title VII gender discrimination suit) indeed, discrimination lawsuits rarely turn on direct evidence of bias. Wheelock College, supra at 137. (Proof of unlawful discrimination rarely can be established by direct evidence.) The probative value of circumstantial evidence has never been seriously questioned and the persuasive value of circumstantial evidence may exceed that of direct evidence. Southern Worcester County Regional Vocational School District. v. Labor Relations Commission, 386 Mass. 414, 421 (l982). As the First Circuit Court of Appeals has concluded:

>A claim of discrimination need not be proven through direct evidence; circumstantial evidence may support an inference may support an inference of discrimination. See United States Postal Service v. Aikens, 460 U.S. 711, 714 n.3 (l983); Loeb v. Textron, Inc., 600 F. 2d 1003, 1017 (1st Cir., 1979) Indeed, discrimination can often be of such subtle, insidious character that a plaintiff may only be able to offer circumstantial evidence to buttress his claim. As this court has ruled, circumstantial evidence of a discriminatory atmosphere at a plaintiff's place of employment is relevant to the question of motive in considering a discrimination claim. While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination . . . such evidence does tend to add color to the employer's decision-making process and to the influences behind the actions taken with respect to the individual plaintiff. See Sweeny v. Trustees of Keene State College, 604 F. 2d 106, 113 (1st Cir., 1979), cert. Denied, 444 U.S. 1045 (l980); cf. Lamphere v. Brown

University, 685 F. 2d 743, 749-750 (l982). Conway v. Electro Switch Corp., 825 F. 2d 593 (1st Cir., 1987).

Combining the courts' willingness to accept circumstantial evidence of discriminatory motive with the general principle that, at this point in the proceedings the court must resolve any conflicts in the summary judgment materials, and make all logically permissible inferences, in plaintiff's favor. Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202, 203 (l991); See also LeBlanc v. Great American Insurance Co., 6 F.3d 836 (1st Cir., 1993) (We, like the District Court, are obliged to review the record in the light most favorable to the non-moving party, and to draw all reasonable inferences in the non-moving party's favor) has lead most courts to conclude, (i)n cases where motive, intent, or other state of mind questions are at issue, summary judgment is often inappropriate. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (l991).

**B.     The Defendant's Motion for Summary Judgment on the Counts Alleging Sexual Harassment must fail as the Plaintiff was forced to work in a work, which was permeated with Intimidation and Insult and created a pervasive and abusive working environment.**

Title VII of the Civil Rights Act of l964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color religion, sex, or national origin." 42 U.S.C. Section 2000e-2(a)(1). Meritor Savings Bank, FSV v. Vinson, 477 U.S. 57(l986). In 1980 the EEOC issued Guidelines specifying that "sexual harassment," as there defined, is a form of sex discrimination prohibited by Title

VII. As an "administrative interpretation of the Act by the enforcing agency," Griggs v. Duke Power Co., 401 U.S. 424 433, 434 (l971), these Guidelines, "'while not controlling upon the courts by reasons of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance,'" General Electric Co., v. Gilbert, 429 U.S. 125, 141-142 (l976), quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (l944). The EEOC Guidelines fully support the view that harassment leading to non-economic Injury can violate Title VII.

      In defining "sexual harassment," the Guidelines first describe the kinds of workplace conduct that may be actionable under Title VII. These include "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." 29 CFR Section 1604.11(a) (l985). Relevant to the charges at issue in this case, the Guidelines provide that sexual misconduct constitutes prohibited "sexual harassment," whether or not it is directly linked to the grant or denial of an economic quid pro quo, where "such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." Section 1604.11(a)(3).

      In concluding that so-called "hostile environment" harassment violates Title VII, the EEOC drew upon a substantial body of judicial decision and EEOC precedent holding that Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule and insult. See generally 45 Fed. Reg. 74676 (l980). Rogers v. EEOC, 454 F.2d 234 (5th Cir. l971), cert. denied, 406 U.S. 957 (l972), was apparently the first case to recognize

a cause of action based upon a discriminatory work environment. In <u>Rogers</u>, the Court of Appeals for the Fifth Circuit held that a Hispanic complainant could establish a Title VII violation by demonstrating that her employer created an offensive work environment for employees by giving discriminatory service to its Hispanic Clientele. "One can readily envision working environments so heavily polluted with discrimination as to destroy completely the emotion and psychological stability of minority group workers. " <u>Id</u>.

 Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality. Surely, a requirement that a man or woman run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living can be as demeaning and disconcerting as the harshest of racial epithets." <u>Henson v. Dundee</u>, 682 F.2d 897, 90-2 (11th Cir. 1982). Finally, for sexual harassment to be actionable, it must be sufficiently severe or pervasive "to alter the conditions of the victim's employment and create an abusive working environment. <u>Rogers v.</u> EEOC, supra, at 238. See also <u>Meritor Savings Bank, FSB v. Vinson</u>, 477 U.S. 57 (l986).

 This court affirmed the holding in <u>Meritor Savings Bank</u>, <u>FSB v. Vinson</u> 477 U.S. 57 (l986) In the case of <u>Harris v. Forklift Systems, Inc.</u> 510 U.S. 17 (l993) the court took a "middle path" between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury. In the case at hand we have serious physical and psychological injuries. As the court pointed out in <u>Meritor</u>, "mere utterance of an . . . epithet which engenders offensive feelings in an employee," ibid, does not sufficiently affect the

conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment and there is no Title VII violation. Harris at p. 21.

The court continues by saying that Title VII comes into play before the harassing conduct leads to a nervous breakdown. Id. A discriminatorily abusive work environment even one that does not seriously affect employees' psychological well being can and often will detract from the employee's performance, discourage employees from remaining on the job or keep them from advancing in their careers. Certainly Title VII bars conduct that would seriously affect a reasonable person's psychological well being, but the statue is not limited to such conduct. Id. In the case at hand we have conduct that did affect Mr. Bourbeau's psychological and psychical well-being. The issue here is whether the reaction on the part of the defendant was "reasonable". This is a factual issue for the jury.

As to employer liability the EEOC suggests we ask whether the victim of sexual harassment had a reasonably available an avenue of complaint regarding such harassment and utilized, whether that procedure was reasonably responsive. Meritor at p. 71. In the case at hand, the plaintiff complained and complained to no avail. Probably because his supervisor was the one who was engaged in the complained about conduct.

**C.    The Defendant's Motion for Summary Judgment on the Counts Alleging Sexual Harassment under M.G.L. 151B must fail as the Plaintiff was forced to work In a work which was permeated with Intimidation and Insult and created a pervasive and abusive working environment.**

Chapter 151B of the General Laws states that it is an unlawful practice for an employer, as defined In G.L. c. 151B, Section1 (5), "to sexually harass any employee." G.L. c. 151B, Sec. 4 (16). Sexual harassment as defined In G.L. c. 151B includes "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature" which has the "purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment." G.L. c. 151B, Sec. 1 (18) (b). Melnychenko v. 84 Lumber Co. 424 Mass. 285 (l997).

In the case at hand, the issue is whether the conduct complained about is reasonable or unreasonable in causing the issues that seriously affected the plaintiff 's psychological and physical health. This is an issue that must be decided by the jury. The definition under this Mass statue contains language, which includes conduct of a sexual nature, which has the effect of unreasonably interfering with the plaintiff's work performance by creating an abusive and hostile work environment. In the case at hand in the plaintiff's affidavit he swears under pains and penalties of perjury that he was afraid to do his job because he did not know what he was going to see behind closed doors. Although he delineated seven specific incidences in his deposition of what he remembers, he states in his affidavit that he was afraid all day every day of discovering them doing something offensive. His complaints to the supervisor who was creating the

problem went unreasoned to. Serious physical and emotional injuries were caused by the environment at work of being harassed, ignored and passed over. These incidences were incidences of a sexual nature and they did interfere with the plaintiff's work. The issue here as well as under Title VII is whether the plaintiff's reactions were reasonable or not. This is a factual issue for the jury and one of material fact.

### D. The Defendant's Motion for Summary Judgment on the Counts Alleging Disparate Treatment under Title VII must fail as the Plaintiff was forced to work In a work which was permeated with Intimidation and Insult and created a pervasive and abusive working environment.

The Plaintiff alleges that he was treated disparately in comparison to Ms. Cardin. In order for plaintiff to prevail in a disparate treatment Title VII action, he must produce evidence according to the now familiar framework set forth in McDonnell Douglas v. Green, 411 U.S.792, 802-805 (1973), where the plaintiff bears the initial burden of establishing a prima facie case of sex discrimination then the court must consider the defendant's justification by producing a legitimate nondiscriminatory reason for it's actions that the plaintiff then has the opportunity to prove that the reason was merely a pretext.

Title VII of the Civil Rights Act of 1964 as amended, makes it "an unlawful employment practice for an employer . . . to discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's sex." 42 U.S.C. section 2000e-2(a)(1). The phrase "terms, conditions, or privileges of employment" evinces a

congressional intent "to strike at the entire spectrum of disparate treatment of men and women" in employment. Meritor Sav. Bank v. Vinson, 477 U.S. 57, 64 (l986).

The factual basis for this claim is the fact that Ms. Cardin was the girlfriend of the plaintiff's supervisor. Other employees testified that they observed the behavior between Ms. Cardin and Mr. Theroux. As a result of this relationship, the plaintiff was treated differently. This relationship was one of a sexual nature and it affected the plaintiff in drastic ways. Ms. Cardin was allowed to use the company car. Ms. Cardin was essentially given supervisorial control over the plaintiff. Ms. Cardin would be given the responsibility of negotiating with parts suppliers and would be given permission to go to parties. These were all tasks that should have been given to the plaintiff in his capacity as supervisor.

### E. The Defendant's Motion for Summary Judgment on the Counts Alleging Intentional Infliction of Emotional Harm must fail as In the case at hand, 151B Is not the exclusive remedy and that 151C does not bar a claim for behavior which Is Intentional and outside the scope of the employment of the Individual.

Defendant's claim is that 151B is the exclusive remedy for a state discrimination claim. The weight of state law decisions is in favor of allowing a party to be able to maintain a variety of claims. Green v. Wyman-Gordon Co., 422 Mass. 551, 557 (l996); and Ruffino v. State Street Bank and Trust Co., 908 F. Supp. 1019, 1043 (D. Mass 1995). In the case at hand, there is nothing under 151B preventing an intentional infliction of emotional harm claim from proceeding.

The harder question is the exclusivity provision of the workers' Compensation Act G.L. c. 152, 24. The Act clearly indicates that an employee waives any cause of action with respect to an injury that is compensable under this chapter unless the employee gives written notice of the intention to preserve such cause of action to the employer at the time he was hired. Id. This is not the case here.

However, 152 does not shield individual employees from liability for any an all intentionally tortious conduct. See Bowman v. Heller 420 Mass. 517 (l995) (upholding trial court finding of intentional infliction of emotional distress where plaintiff was sexually harassed at work). While some claims are barred, actions in tort will lie where the employee commits an intentional tort, which was in no way within the scope of employment furthering the interests of the employer. O'Connell v. Chasdi, 400 Mass. 686, 690 (l987).

In the case at hand, there were several acts of Mr. Theroux which were both intentional and outside the scope of his employment including callously smoking in front of and in close proximity of the plaintiff in spite of the fact that the plaintiff repeatedly complained and in spite of the fact that the Mr. Theroux knew that this was in violation of the City's Policy. Further, the defendant's affair with Cardin as well as his public displays of affection with her was definitely outside the scope of his employment.

In order to maintain a claim for intentional infliction of emotional distress plaintiff must show that the defendants' intended to cause plaintiff severe emotional harm by means of extreme and outrageous actions, and that plaintiff suffered severe emotional damage. Agis v. Howard Johnson Co., 371 Mass. 140,

144-145 (l976). The actions of the defendant smoking in front of the plaintiff and in deliberately thumbing his nose at the Chicopee's smoking policy was outside the bounds of human decency especially with the fact that he knew that the smoke bothered the plaintiff and that the smoke exacerbated his existing seizure disorder.

Finally, the defendant along with Cardin engaged in offensive conduct although directed toward each other, it kept on going long after the plaintiff asked them to stop. The defendant and Cardin continued acting inappropriately long after plaintiff asked them to stop, after a period of time these acts became intentional in that the defendants' intentionally began to ignore the plaintiff's pleas for this behavior to stop.

The plaintiff suffered both psychological and physical harm due the outrageous conduct of the defendants'.

**F.     Absent a 151C bar, The Defendant's Motion for Summary Judgment on the Counts Alleging Negligent Infliction of Emotional Harm must fail as the Plaintiff suffered actual physical Injury to the negligent actions of the defendants.**

To recover for the tort of negligent infliction of emotional distress, a plaintiff must prove "(1) negligence; (2) emotional distress; (3) causation; (4)