physical harm manifested by objective symptomatology; and (5) that a reasonable person would have emotional distress under the circumstances of the case." It is fundamental that there must be a showing of a duty of care owed to the plaintiff because "there can be no negligence where there is no duty." McHerron v. Jimny Peak, Inc.422 Mass. 677 (l994). Whether a defendant has a duty of care to the plaintiff in the circumstances is a question of law for the court to be determined by reference to existing social values and customs and appropriate social policy." O'Sullivan v. Shaw, 431 Mass. 201, 203 (2000) Although the defendant may not have a duty to "insulate people from a host of relationships," the defendant as a supervisor of a job would have a duty to his employees to follow the policies of the place that he works for. He would have a duty to his employees to provide a safe working environment, one that is smoke free especially when that is the policy of the City of Chicopee. He would also have a duty to provide a work place that is free from harassment of all kinds where all people can work without stress and without being subject to emotional harm.

  A successful negligent infliction of emotional distress claim must corroborate their mental distress claims with enough objective evidence of harm to convince a judge that their claims present a sufficient likelihood of geniuses to go to trial. Sullivan v. Boston Gas Co. 414 Mass. 129, 132 (l993).

  Although expert testimony is not necessary, in this case there is ample testimony from the affidavit of Dr. Koppleman to show actual physical symptoms stemming from the behavior of the defendants. Dr. Koppleman opined under oath that the defendant was suffering from actual physical symptoms from the stress of his job. First of all, Dr. Koppleman stated that although the plaintiff was suffering

from a seizure disorder prior to his work for the Chicopee Maintenance Department, he had been seizure free for years prior to the stressful situation at work, which led to the charges in the case at hand being pressed. Dr. Koppleman opines that the smoke and stress led to the seizure disorder coming back stronger than ever. She testifies that the plaintiff was experiencing tremors. She opines that the plaintiff suffered from serious emotional issues such as PTSD due to the behaviors from the defendants at work. She further opines that nodules, which occurred on his lungs, were due to the smoking. There is ample evidence of physical evidence in the case at hand. In the case at hand the old case law of Payton v. Abbot Labs, supra at 556, which required objective symptomatology with expert medical testimony, would have still been satisfied. The new case law requires a less stringent showing that the plaintiff must "corroborate their mental distress claims with enough objective evidence of harm to convince a judge that their claims present a sufficient likelihood of genuineness to go to trial Sullivan v. Boston Gas Co., supra at 137-138.

**G.    The Defendant's Motion for Summary Judgment on the Counts Alleging a Violation of 29 U.S.C. 2613: Medical Leave Act must fail In the case at hand as the defendant was told he was going to be let go prior to the forms being delivered to him.**

To prevail on an FMLA claim, an aggrieved worker must establish that the worker was an eligible employee that the worker covered for an employer covered by the act, that the worker has to show that he qualified for FMLA benefits, that there was appropriate notice and that the employer denied benefits to the applicant. 29 U.S.C. Section 2612 (a)(1) (2004). See also Cavin v. Honda of American Mfg. Inc., 346 F.3d 713, 716 (6th Cir. 2003).

The defendant claims in his motion that the plaintiff admitted receiving forms but failed to fill them out. (Plaintiff's Deposition Ex. C, 152:13-19) This is true. The plaintiff previously requested these forms due to an illness, which qualified him for FMLA benefits. When he received these forms he was already informed that he was being terminated. At that point in time the plaintiff did not see the point in filling out the forms. (Plaintiff's Deposition Ex. C, 152: 13-19)

The twin purposes of the FMLA are to "balance the demands of the workplace with the needs of families" and to entitle employees to take reasonable leave for medical reasons." <u>Hodgens v. Gen. Dynamics Corp.</u>, 144 F3d 151, 159 (1st Cir. 1998). The FMLA provides that an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . because of a serious health condition that makes the employee unable to perform the basic functions of the position of such employee." 29 U.S.C. Sec. 2612(a)(1). It is a violation of the FMLA for any employer to "interfere with, restrain, or deny the exercise of any right provided" by the FMLA. Section 2615 (a)(1).

In the case at hand, the defendant terminated the plaintiff after he requested the FMLA forms, thereby interfering with his exercise of these rights. The employer shall prove the employee had a reasonable opportunity to cure any deficiency in their application for FMLA benefits. <u>Washington v. Fort James Operating Co.</u>, 110 F. Supp. 2d 1325, 1330 (D. Or. 2000). Termination is not an appropriate response for an inadequate certification. <u>Sims v. Alameda-Contra Transit Dist.</u>, 2 F. Supp. 2d 1253, 1266 (N.D. Cal. 1998).

**H.     The Defendant's Motion for Summary Judgment on the Counts Alleging a Violation of 42 U.S.C. 12101, et seq. American With Disabilities Act must fail.**

The Americans with Disabilities Act (ADA) 42 USCS 12101 et seq. which prohibits an employer from discrimination based upon the known physical or mental impairments of a qualified individual with a disability. 42 U.S.C. Sec. 1211 (l994). To establish a claim for disability discrimination under the ADA, an employee must show: (1) that he suffers from a disability; (2) that he was nevertheless able to perform the essential functions of his job, either with or without reasonable accommodation; and (3) that his employer took adverse action against him because of his disability. Wright v. CompUSA, Inc. 352 F.3d 472 (1st Cir. 2003). A disability under the act has been defined as substantially limiting one in one more or more major life activities as a result of that disability. Vaughn Murphy v. UPS 527 U.S. 516 (l999).

The defendant focuses on a small portion of the plaintiff's deposition for their argument that there is no genuine issue of material fact whether the plaintiff was suffering from a disability and that his employer took adverse action against him because of his disability. Dr. Koppleman under oath has advised us of Mr. Bourbeau's tendency to minimize his symptoms and complaints. The defendant also has ignored the report and affidavit of Dr. Koppleman who discusses the devastating effects of the defendant's seizure disorder and other stress related disorders. It has always been part of the plaintiff's case that both the seizure disorder, the lung issues and the posttraumatic stress and depression disorders constituted disabilities under the ADA.

Dr. Koppleman notes that on April 2, of 2002 the stress level in the plaintiff's work environment had escalated to a point that he felt he was being

threatened and was shaking so much he thought he was having a seizure. It was at this time Dr. Koppleman advised him to take time off of work. In <u>Vaughn Murphy v. UPS</u>, 527 U.S. 516 (1999) the court ruled that petitioner's hypertension was not a disability and that when petitioner was medicated he functioned normally therefore petitioner's impairment did not substantially limit one or more of his major life activities and petitioner was not regarded as disabled. Further they ruled that the reason for the termination by the Department of Transportation was because of the blood pressure of the defendant exceeded the Department of Transportation's requirements for drivers of commercial vehicles.

  The case at hand is unlike the above situation where medication gave the plaintiff complete control over his disorder. In the case at hand the medication was affected by the conditions at work, the smoke and the stress. It is clear that one thing affected each other. The lack of a smoking policy and accommodation caused illness, which caused stress, which caused an exacerbation of the plaintiff's seizure disorder and caused him a further disability, suffering from a mental illness, Post Traumatic Stress Syndrome and stress induced depression.

  The deposition that is referred to and copied into the defendant's motion for summary judgment refers to a period of around the year 2000 where medication was controlling the defendant's seizure disorder. There is no issue that the defendant Theroux was advised of the plaintiff's seizure disorder. With callousness the defendant Theroux testified in his deposition that he realized that smoking in the workplace was a violation of City policy but he allowed smoking anyway in spite of the fact that the he knew of the plaintiff's issue.

Dr. Koppleman in her affidavit and disclosure was clear as to issues of causation. Firstly, Dr. Koppleman tells us that the plaintiff complained of respiratory problems due to second hand smoke and the defendant's refusal to accommodate his problem, which caused Mr. Bourbeau stress, increased his seizure activity and ultimately led to a mental illness.

Koppleman begins her affidavit by explaining that back in December of 2001, Mr. Bourbeau was beginning to experience respiratory problems related to his breathing in second hand smoke at work. Eventually this led to bilateral small nodules appearing on his lung. Dr. Koppleman attributes these nodules to Pneumonia precipitated by his exposure to second hand smoke in combination with a decreased immune status due to stress. It was at this time that Mr. Bourbeau was referred to a therapist for a diagnosis of PTSD, panic disorders and stress induced depression from activities relating to work.

With the increased stress came increased seizure activity. Dr. Koppleman notes as does the plaintiff in his deposition that from the time of his first seizure until 2002 he was seizure free. Then due to increased stress at work, primarily the smoking issue and due to the sexual antics of his supervisor and Ms. Cardin he began to experience increased neurological activity causing complaints of intermittent problems with uncontrollable tonic arm activity, loss of concentration, memory lapses and an increased occurrence of migraine headaches. Dr. Koppleman relates this increase seizure activity to stress related to the smoking and other issues at work.

It can be said in this case as opposed to <u>Murphy v. UPS</u> that the above-described disabilities did substantially limit one or more of the plaintiff's major

life activities. Mr. Murphy merely had to take his medicine to function normally. Alan Bourbeau was paralyzed and could not function at all, which is why Dr. Koppleman kept on writing Mr. Bourbeau notes ordering that he not go to work. Further during this time Mr. Bourbeau was experiencing tremors in his hands preventing him from writing, sleep problems and sexual impotence all related to his disability caused by his working environment. Mr. Bourbeau's disability was certainly not limited to his inability to perform just one job. He could not function at all.

    This is not a situation such as illustrated in Murphy where the plaintiff in that case was terminated because his blood pressure was over the limit for his particular job. This was held to be a legitimate reason and therefore the court held that there was no adverse reaction against the plaintiff. Id. In the case at hand the City of Chicopee is claiming that the reason for the termination of the defendant was a 10-15 percent budget cut for all departments. The plaintiff alleges in his affidavit that that there were six people let go at the same time as him. The plaintiff further avers that out of the six, one retired and four were rehired by the City. The plaintiff, therefore was the only person at this time to lose his job permanently. The plaintiff further averred in his affidavit that he should have had a five-year call back period and that specifically a position for a machinist at the fire department opened up that he was never called. The labeling of the action against the plaintiff was a pretext for what was truly an involuntary dismissal.

**I.     The Defendant's Motion for Summary Judgment on the Count Alleging a violation of 42 USC 12101, et seq.: American with Disabilities: Reasonable Accommodation must fail because there Is an Issue of material fact for the jury as to whether the plaintiff was disabled.**

For the reasons argued above, there is a genuine issue of material fact for the jury whether the plaintiff was disabled or not. Therefore, under 42 U.S.C. 12101, et seq., there existed a duty on the part of the employer to provide a smoke free and stress free environment for Mr. Bourbeau. Not only was this not done in contravention to the Chicopee Municipal Policy, Mr. Theroux flaunted the policy in Mr. Bourbeau's face and stated that he knew of the policy and disregarded it anyway.

**J.     The Defendant's Motion for Summary Judgment on the Count Alleging a violation of G.L. c. 151 Sec. 1(17) must fail as there is a genuine Issue of material fact for the jury to decide.**

In order to prevail on a claim under M.G.L. c. 151 B, Section 1(17), the analysis is similar to that undertaken in section I above; the Plaintiff must prove that he suffers from a handicap, that he is a qualified handicapped person, and that he was fired solely because of his handicap. Labonte v. Hutchins & Wheeler, 678 N.E. 2d 853, 859 (l997), Handrahan v. Red Roof Inns, Inc., 680 N.E. 2d 568, 571 (l997). Under the Massachusetts Statute the courts have held like the federal courts that the handicap is someone who has a physical and mental impairment, which substantially limits one or more of his major life activities. Major life activities means functions such as caring for oneself, performing manual tasks, seeing, hearing, speaking breathing, learning, and working. G.L. c. 151B Section

1(17), 1(20), <u>Cox v. New England Tel & Tel Co.</u>, 607 N.E. 2d 1035, 1039 (l993) <u>Talbot Trading Co. v. MCAD</u> 636 N.E. 2d 1351, 1355 (l994).

Dr. Koppleman in her affidavit and disclosure was clear as to issues of causation. Firstly, Dr. Koppleman tells us that the plaintiff complained of respiratory problems due to second hand smoke and the defendant's refusal to accommodate his problem, which caused stress, increased the plaintiff's seizure activity and ultimately led to mental illness.

Koppleman begins her affidavit by explaining that back in December of 2001, Mr. Bourbeau was beginning respiratory problems related to breathing in second hand smoke from work. Eventually this led to bilateral small nodules appearing on his lung. Dr. Koppleman attributes this to Pneumonia precipitated by his exposure to second hand smoke in combination with a decreased immune status due to stress. It was at this time that Mr. Bourbeau was referred to a therapist for a diagnosis of PTSD, panic disorders and stress induced depression from activities relating to work.

With the increased stress came increased seizure activity. Dr. Koppleman notes as does the plaintiff in his deposition that from the time of his first seizure until 2002 he was seizure free. Then due to increased stress at work and primarily the smoking issue and due to the sexual antics of his supervisor and Ms. Cardin he began to experience increased neurological activity causing complaints of intermittent problems with uncontrollable tonic arm activity, loss of concentration, memory lapses and an increased occurrence of migraine headaches.

Dr. Koppleman relates this increased seizure activity to stress related to the smoking and other issues at work.

It cannot be said that the above-described disabilities did not substantially limit one or more of the plaintiff's major life activities. Mr. Murphy merely had to take his medicine to function normally. Alan Bourbeau was paralyzed and could not function at all, which is why Dr. Koppleman kept on writing Mr. Bourbeau notes ordering that he not go to work. Further during this time Mr. Bourbeau was experiencing tremors in his hands preventing him from writing, sleep problems and sexual impotence all related to his disability caused by his working environment. Mr. Bourbeau's disability was certainly not limited to his inability to perform just one job. He could not work at all.

In the case at hand the City of Chicopee is claiming that the reason for the termination of the defendant was a 10-15 percent budget cut for all departments. The plaintiff alleges in his affidavit that that there were six people let go at this time. The plaintiff further avers that out of the six, one retired and four were rehired by the City. The plaintiff, therefore was the only person at this time to lose his job permanently. The plaintiff further averred in his affidavit that he should have had a five-year call back period and that specifically a position for machinist at the fire department opened up and he was never called. The labeling of the action against the plaintiff was a pretext for what was truly an involuntary dismissal.

**K.     The Defendant's Motion for Summary Judgment on the Count Alleging a violation of G.L. c. 151 Sec. 1(17): Reasonable Accommodation must fail as there Is a genuine Issue of material fact for the jury to decide.**

For the reasons argued above, there is a genuine issue of material fact for the jury whether the plaintiff was disabled or not. Therefore, under G.L. c. 151 Sec. 1(17)., there existed a duty on the part of the employer to provide a smoke free and stress free environment for Mr. Bourbeau. Not only was this not done in contravention to the Chicopee Municipal Policy, Mr. Theroux flaunted the policy in Mr. Bourbeau's face and stated that he knew of the policy and disregarded it anyway.

**L.     The Defendant's Motion for Summary Judgment on the Count Alleging a violation of the Civil Rights Act of l964, 42 U.S.C. 2000e, et seq., and G.L. c. 151 : Retaliation must fail as there Is a genuine Issue of material fact for the jury to decide.**

In order to establish a claim of retaliatory discharge under Title VII and M.B.L. 151B plaintiff must show by a preponderance of the evidence that he (1) engaged in a protected activity as an employee, (2) he was subsequently discharged from employment, and (3) there was a causal connected between the protected activity and the discharge. Hoppner v. Croteched Mountain Rehabilitation Ctr., (1st Cir. 1994)

There is a genuine issue of material fact regarding the circumstances of the plaintiff's discharge, therefore this case must go forward to trial and allowed to be presented to the jury. First of all the plaintiff had been complaining about lack of accommodation and sexual harassment for some period of time before May of 2002 and was terminated while on medical leave for issues resulting from these complaints regarding sexual harassment and issues involving his seizure disorder which was a direct cause from the smoking.. He had just filed a MCAD claim and was then terminated and was never hired back.

The defendants fail to survive summary judgment because there is a genuine issue of material fact of a causal link between the plaintiff's protected activity and the alleged retaliation and discharge. The person that the plaintiff was complaining about was still his direct supervisor and admittedly made the decision to terminate the plaintiff's position alone. He testified that he was "annoyed" with the plaintiffs' constant complaining.

The defendants' rely on the fact that there was 10-15% budget cuts made at the time but according to the plaintiff in his affidavit there were only six employees who lost their jobs. The plaintiff put in his affidavit that four of these six got either their jobs back or other jobs back. The fifth person retired. Therefore only the plaintiff permanently lost his job. Further, the Employer was contractually bound to recall the plaintiff if jobs became available. The plaintiff knew of a job, which was available as a mechanic with the fire department. The plaintiff was never offered that job or any job with the City.

The fact that there were budget cuts going on at the time that the plaintiff lost his job is not the end of the matter. We still have to examine all the factors revolving around the budget cuts to determine if this issue served as the pretext for the unlawful discrimination. McDonnell Douglas Corp. v. Green 411 U.S. 792, 804-805 (l973). This was to be determined to be a factual issue for the jury. Id. Even if we get to the three-step analysis as announced in McDonnell Douglas the defendant fails in his motion for summary judgment on this issue. The first stage of the complainant in a Title VII trial must carry the initial burden of establishing a prima facie case of racial discrimination. This may be done by showing (1) that he belongs to a racial minority; (2) that he applied and was

qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, he was rejected; and (4) that, after his rejection, the position remained open and the employer continued to see applicants.

As this court sees, <u>McDonnell Douglas v. Green</u> was an unlawful rejection case not an unlawful hiring case and the <u>McDonnell</u> Court specifically stated that "The facts necessarily will vary in Title VII cases and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." <u>Id</u>. The Defendant relies heavily on the fact that the position was eliminated and never reinstated. First of all we would argue that the analysis on an unlawful termination case would be different than an unlawful hiring case and we still need to analyze the budget cut argument to determine if that was merely a pretext. The fact that the person who was the subject of the plaintiff's complaints was the one who directly fired the plaintiff is suspicious.

There is a factual dispute as to whether a prima facie case was established. The plaintiff was the subject of sexual harassment and handicap disability discrimination, which caused both serious physical and psychological injuries. He then complained about this to the person who was his supervisor and the person who was smoking in front of the plaintiff and the person having the sexual encounter with Cardin. This person then solely decided to terminate the plaintiff's position. There is a factual issue to be determined by the jury

The moving party then needs to articulate a legitimate nondiscriminatory reason for the employee's termination. The City stated it was because of budget cuts. Then the employer gets to show whether this reasons was pretextual. This is

a factual issue for trial. McDonald Douglas v. Green. Id. The Plaintiff must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a cover-up for a racially discriminatory decision. Id. at 805. This opportunity must be given to the plaintiff at trial. Id. This would be the same under G. L. 151B Lynn Teachers Union, Local 1037 v. Mass. Commission Against Discrimination, 406 Mass. 515, 520 (l990).

### M.  The Defendant's Motion for Summary Judgment on the Counts alleging a violation of various statute of limitations must fail because there remains Issues of material fact to be heard by the jury.

The defendant mistakenly relies on National Railroad passenger Corporation v. Morgan, 536 U.S. 101, 114-116 (2002). It is true the holding in that case states that discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify and constitute a separate actionable "unlawful practice" each of which are discrete acts which must individually meet the statute of limitation requirements. There is no issue that the filing of the retaliatory termination claim meets the statute of limitation.

As to the other acts, the Morgan court specifically stated that Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The repeated nature of the harassment or its intensity constitutes evidence that management knew or should have known of its existence Id. This type of unlawful employment practice therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Harris v. Forklift Systems, Inc. 510 U.S. 17, 21 (l993). Thus "when the workplace is permeated with 'discriminatory intimidation,

ridicucle and insult,' that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII Is violated. Id. By analogy reasonable accommodation would fall under the above exception as constituting a continuing course of conduct.

### N. The Defendant's Motion for Summary Judgment as to the City of Chicopee on the Intentional Infliction of Emotional Stress claim succeeds against the City but not against the Defendant Theroux

While public employers, like the City of Chicopee, may not be held liable for intentional torts committed by their employees, the employees may be personally liable for nay harm they have caused. Morash & Sons v. Commonwealth, 363 Mass. 612, 615 (l973). The claim against Theroux must go to the jury.

### O. The Defendant's Motion for Summary Judgment as to Negligent Infliction of Emotional Stress must fail as the presentment letter alleged sufficient detail to be a proper presentment letter.

The defendant City of Chicopee alleges a defective presentment letter because some of the acts alleged were two years prior to the letter being written. The letter was written on April 8, 2004 and there were some acts alleged before April 8, 2002. This claim fails for several reasons. First of all there is plenty of specificity in the letter and plenty of acts alleged occurring after April 8, 2004 to give adequate notice to the City of Chicopee. While a presentment letter should

be precise in identifying the legal basis of a plaintiff's claim, . . . letters . . . were not so obscure that educated public officials should find themselves baffled or misled with respect to his assertion of a claim for negligent infliction of emotional distress… Gilmore v. Commonwealth 417 Mass. 718 721 (l994)

Also for the reasons discussed above in M section above, in that the allegations of neglect are associated with a continuing act of conduct due to hostile conditions and the failure of the City to correct these issues up until the act of termination. The Commonwealth had adequate notice of negligent acts within the two year period required under the law, including the acts of Theroux on May 7, 2002 after the City had been notified of this ongoing problem; including the May 24, 2002 date when plaintiff was locked out of his place of employment. The letter is clear that the acts alleged were ongoing and were taking place up until the May 24, 2002 date.

**P.    The Defendant's Motion for Summary Judgment as to Individual liability of Mr. Theroux also fails as there are genuine Issues of material fact to be determined by the jury.**

With respect to 151B, it provides for individual liability where any person acts in a way that interferes with the rights secured under G.L.c. 151B. In the case at hand if the jury determines that Theroux interfered with plaintiff's 151B rights, then Mr. Theroux can be individually liable. Meara v. Bennett, 27 F. Supp. 2d 288 (l998); Ruffino v. State Street Bank and Trust Co. 908 F. Supp. 1019, 1048 (D. Mass. 1995). The same is true for actions under FMLA.

        THE PLAINTIFF
        Alan Bourbeau

By: <u>/s/Alan J. Black</u>
   Alan J. Black, Esquire
   1383 Main Street
   Springfield, MA  01103
   (413) 732-5381
   BBO# 553768